**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LARISSA BATES, on behalf of herself, all others similarly situated, and the general public,

               Plaintiff,

v.

ABBOTT LABORATORIES,

               Defendant.

---

Case No. 1:23-cv-387-TJM/CFH

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES' MOTION TO DISMISS PLAINTIFF LARISSA BATES'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6), 9(b), AND 12(b)(1)**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................... 3

LEGAL STANDARD............................................................................................ 5

ARGUMENT ......................................................................................................... 6

I.    In Light Of Ensure's Explicit Sugar Disclosures, No Reasonable Consumer
      Would Find The Challenged Statements Misleading. ...................................... 6

II.   Bates's Claims Should Be Dismissed To The Extent They Are Based On
      Challenged Statements That Are Otherwise Inactionable Under New York Law. .......... 10

      A.    Several Challenged Statements Are Indisputably True. ...................................... 10

      B.    Several Challenged Statements Are Too Vague to Support a Claim.................... 12

III.  Bates's Claims Are Preempted By Federal Law To The Extent They Depend On
      Representations About Nutrient Content. ........................................................... 14

IV.   Bates Has Not Adequately Pleaded Her Individual Causes Of Action. .......................... 18

      A.    Bates's Intentional Misrepresentation Claim Should Be Dismissed For
            Failure to Plead Fraudulent Intent Under Rule 9(b). ............................................. 18

      B.    A New York Negligent Misrepresentation Claim Requires a Special
            Relationship, Which Bates Does Not Adequately Allege. .................................. 19

      C.    As Bates Did Not Provide Pre-Suit Notice, Her Express Warranty Claim
            Fails............................................................................................................... 20

      D.    Plaintiff's Duplicative Unjust Enrichment Claim Fails. ...................................... 21

V.    Bates Lacks Article III Standing To Pursue Injunctive Relief. ....................................... 22

CONCLUSION..................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)...................................................................................20

*Alce v. Wise Foods, Inc.*,
    2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) ..................................................22, 23

*Anderson v. Bungee Int'l Mfg. Corp.*,
    44 F. Supp. 2d 534 (S.D.N.Y. 1999)......................................................................13

*Barreto v. Westbrae Nat., Inc.*,
    518 F. Supp. 3d 795 (S.D.N.Y. 2021)...............................................................18, 19

*Beers v. Mars Wrigley Confectionery US, LLC*,
    2022 WL 493555 (S.D.N.Y. Feb. 17, 2022)...............................................6, 11, 21

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020).............................................................................22, 23

*Blue Buffalo Co. Ltd. v. Nestlé Purina Petcare Co.*,
    2015 WL 3645262 (E.D. Mo. June 10, 2015) .......................................................13

*Borenkoff v. Buffalo Wild Wings, Inc.*,
    2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ..........................................................22

*Brown v. Abbott Labs., Inc.*,
    2011 WL 4496154 (N.D. Ill. Sept. 27, 2011) .......................................................10

*Brown v. Kerry Inc.*,
    2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021), *report and recommendation
    adopted*, 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022) ...........................7, 18, 19, 22

*Campbell v. Drink Daily Greens, LLC*,
    2018 WL 4259978 (E.D.N.Y. Sept. 4, 2018) ..........................................................5

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
    516 F. Supp. 3d 370 (S.D.N.Y. Feb. 2, 2021).................................................19, 21

*Clark v. Perfect Bar, LLC*,
    2018 WL 7048788 (N.D. Cal. Dec. 21, 2018), *aff'd*, 816 F. App'x 141 (9th Cir. 2020)..........9

*Collishaw v. Coop. Regions of Organic Producer Pools*,
    2022 WL 3290563 (S.D.N.Y. Aug. 11, 2022)..........................................................6

*Cosgrove v. Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021)......................................................................21

*Dashnau v. Unilever Mfg. (US), Inc.*,
    529 F. Supp. 3d 235 (S.D.N.Y. 2021)......................................................................19

*Davis v. Avvo, Inc.*,
    345 F. Supp. 3d 534 (S.D.N.Y. 2018)......................................................................13

*Duchimaza v. Niagara Bottling, LLC*,
    619 F. Supp. 3d 395 (S.D.N.Y. 2022)......................................................................19

*Dwyer v. Allbirds, Inc.*,
    598 F. Supp. 3d 137 (S.D.N.Y. 2022)......................................................................12

*Ebin v. Kangadis Food Inc.*,
    2013 WL 3936193 (S.D.N.Y. July 26, 2013) ............................................................5

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013).................................................................................5, 6

*Grossman v. Simply Nourish Pet Food Co. LLC*,
    516 F. Supp. 3d 261 (E.D.N.Y. 2021) .....................................................................21

*Harris v. Mondelēz Glob. LLC*,
    2020 WL 4336390 (E.D.N.Y. July 28, 2020) ..........................................................11

*Izquierdo v. Mondelēz Int'l, Inc.*,
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ..........................................................20

*Kennedy v. Mondelēz Glob. LLC*,
    2020 WL 4006197 (E.D.N.Y. July 10, 2020) ..........................................................11

*Kommer v. Bayer Consumer Health*,
    710 Fed. App'x 43 (2d Cir. 2018)...........................................................................23

*LeGrand v. Abbott Labs.*,
    --- F. Supp. 3d. ---, 2023 WL 1819159 (N.D. Cal. Feb. 8, 2023)..............1, 9, 14, 18

*Mazella v. Coca-Cola Co.*,
    548 F. Supp. 3d 349 (S.D.N.Y. 2021).................................................................6, 7, 8

*Melendez v. ONE Brands, LLC*,
    2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020).....................................................6, 7, 8, 22

*Morales v. Kimberly-Clark Corp.*,
    2020 WL 2766050 (S.D.N.Y. May 27, 2020) ............................................................5

*Morgan v. Wallaby Yogurt Co.*,
  2013 WL 5514563 (N.D. Cal. Oct. 4, 2013)......................................................................9

*Morris v. Walmart Inc.*,
  2020 WL 5645812 (N.D. Ala. Sept. 22, 2020) ............................................................11, 12

*Myers v. Wakefern Food Corp.*,
  2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) .......................................................................20

*N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*,
  2008 WL 1752455 (S.D.N.Y. Apr. 16, 2008), *aff'd*, 556 F.3d 114 (2d Cir. 2009) .................8

*Nelson v. MillerCoors, LLC*,
  246 F. Supp. 3d 666 (E.D.N.Y. 2017) ..........................................................................6, 22

*Otis-Wisher v. Medtronic, Inc.*,
  616 F. App'x 433 (2d Cir. 2015) ...................................................................................14

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013)............................................................................21

*Quiroz v. Beaverton Foods, Inc.*,
  2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019)...................................................................5

*Richards v. Johnson & Johnson, Inc.*,
  2018 WL 2976002 (N.D.N.Y. June 12, 2018)..................................................................21

*Sarr v. BEF Foods, Inc.*,
  2020 WL 729883 (E.D.N.Y. Feb. 13, 2020)....................................................................20

*Seljak v. Pervine Foods, LLC*,
  2023 WL 2354976 (S.D.N.Y. Mar. 3, 2023) ...................................................................23

*Solak v. Hain Celestial Grp., Inc.*,
  2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018).........................................................8, 11, 13

*Spurck v. Demet's Candy Co., LLC*,
  2022 WL 2971957 (S.D.N.Y. July 27, 2022) ..................................................................19

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
  646 F. Supp. 2d 510 (S.D.N.Y. 2009).............................................................................13

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021).................................................................................................6

*Truxel v. Gen. Mills Sales, Inc.*,
  2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ..................................................................9

*Turnipseed v. Simply Orange Juice Co.*,
    2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ...........................................................19

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F.Supp.3d 154 (S.D.N.Y. 2021).........................................................18, 19, 20

*Warren v. Coca-Cola Co.*,
    2023 WL 3055196 (S.D.N.Y. Apr. 21, 2023).........................................................3

*Weiss v. Trader Joe's Company*,
    2018 WL 6340758 (C.D. Cal. Nov. 20, 2018), *aff'd*, 838 F. App'x 302 (9th Cir. 2021)........11

**Statutes**

21 U.S.C. § 343-l(a)(5) .................................................................................................14

21 U.S.C. § 343(r)(l) .....................................................................................................14

N.Y. U.C.C. § 2-313 ......................................................................................................20

N.Y. U.C.C. § 2-607(3)(a) .............................................................................................21

**Regulations**

21 C.F.R. § 101.13(b)(2)(ii)...........................................................................................14

21 C.F.R. § 101.65(d) ....................................................................................................15

**Other Authorities**

FDA Guidance for Industry: A Labeling Guide for Restaurants & Other Retail
    Establishments Selling Away-From-Home Foods, 2008 WL 2155726 (April
    2008) .........................................................................................................................14

**INTRODUCTION**

The full weight of Plaintiff Larissa Bates's Complaint rests on the premise that a handful of statements on the labels of Abbott Laboratories' Ensure® products mislead reasonable consumers about the products' sugar content—even though the challenged statements say nothing whatsoever about sugar and even though those same labels disclose exactly how much sugar each product contains.  Bates's theory is that in making decisions about whether Ensure® products have too much sugar for their own health needs, reasonable consumers either ignore or do not understand the parts of the labels that ***affirmatively state*** how much sugar the products contain and instead rely solely on other parts of the label that ***do not even reference*** sugar.  This stretches New York false labeling law far past its breaking point and should be dismissed.

This case is Bates's second attempt to advance her claims.  In Bates's first case, a California district court dismissed her claims for lack of personal jurisdiction because they were based on New York purchases and thus lacked the requisite nexus to California.  *LeGrand v. Abbott Labs.*, --- F. Supp. 3d. ---, 2023 WL 1819159 (N.D. Cal. Feb. 8, 2023).  There, some aspects of a different named plaintiff's claims did survive the pleadings stage.  But that decision considered California causes of action governed by California law as interpreted by California courts and the Ninth Circuit.  Here, Bates asserts only New York causes of action governed by New York law as interpreted by New York courts and the Second Circuit.

Under New York law, her claims fail on several independent grounds, each of which on its own requires dismissal of all or at least significant portions[1] of the Complaint:

---

[1] A chart of challenged label statements and which arguments in this motion apply to each is attached as Exhibit 1.

***First***, no reasonable consumer would find the challenged statements false or misleading. Under New York law, the disclosure of the amount of sugar on the labels of every Ensure® product dooms Bates's claim that reasonable consumers are misled about the nutritional value of Ensure® based upon the product's sugar content.  Indeed, New York federal courts routinely reject Bates's theory that general statements on a product's label are misleading in the face of ingredient disclosures that give consumers the information to judge a product's nutritional value for themselves.  This defect is fatal to all of Bates's claims.

***Second***, many of the challenged labeling statements should be dismissed.  Several are indisputably true, regardless of how much sugar Ensure® contains, such as the statement that Ensure® is the "#1 Doctor Recommended Brand" and that consumers can "Discover More at Ensure.com."  Other statements are too vague to support a claim under New York law.

***Third***, the federal Food, Drug, and Cosmetic Act ("FDCA") expressly preempts state law purporting to regulate "nutrient content" claims on the labels of products like Ensure®.  This means that claims made in connection or association with a statement about a nutrient in a product—such as the nature or amount of protein, fiber, minerals, vitamins, or other nutrients— cannot form the basis of a state-law false labeling claim.  Many challenged statements run headlong into the FDCA because they appear in the context of descriptions of Ensure®'s nutritional content. Bates's state-law claims thus are preempted to the extent they are based on those statements.

***Fourth***, Bates has failed to adequately plead several of her individual claims.  Bates has not satisfied Rule 9(b)'s requirements, which govern her intentional misrepresentation claim.  Nor has she alleged the special relationship required to support a negligent misrepresentation claim in New York.  As for Bates's express warranty claim, she fails to allege that she provided Abbott

with the pre-suit notice necessary.  And, because it is duplicative of her claims under GBL §§ 349 and 350, Bates's unjust enrichment claim also fails.

**Finally**, Bates's request for injunctive relief should be dismissed.  Having learned the supposed truth about Ensure®, Bates cannot establish she is threatened with any future injury, and she thus lacks standing to pursue injunctive relief on behalf of herself or the putative class.

## BACKGROUND

Abbott manufactures, markets, and distributes nutrition shakes and drinks under its Ensure® brand, which come in different product lines, sizes, and flavors.  *See* Compl. ¶ 1.  Ensure® products contain numerous vitamins and minerals as well as protein, fat, and carbohydrates like sugar.  *See id.* ¶ 1 & n.1; Decl. of M. Glick in Supp. of Abbott's Mot. to Dismiss Pls.' Compl., Exs. 2–7.[2]  While the exact ingredients vary by product, Ensure® products contain vitamins and nutrients like Vitamins A, C, D, and E, Zinc, Protein, Fiber, and Calcium.  *See* Exs. 2–7.  In light of these vitamins and nutrients, Abbott describes Ensure® products as "nutrition shake[s]," "drink[s]," or "powder[s]," and notes that they provide "Complete, Balanced Nutrition." *See* Exs. 2–7.  Ensure® also is the "#1 Doctor Recommended Brand."  *See* Compl. ¶¶ 15, 22, 28, 32, 35; Exs. 2–7.

Bates's Complaint stitches together various statements from the front, side, and back of the labels for Ensure® products, and alleges that those statements communicate that Ensure® is

---

[2] All "Ex." references are to the exhibits attached to the concurrently-filed Declaration of Michael A. Glick.  These exhibits are noticeable and properly considered at the motion to dismiss stage because they reflect true and authentic copies of product labels and regulatory guidance incorporated by reference in the complaint.  *See Warren v. Coca-Cola Co.*, 2023 WL 3055196, at *3 (S.D.N.Y. Apr. 21, 2023) ("The entire 12-pack packaging, including the complete Nutrition Facts panel, is incorporated by reference because it is referenced in and relied on in the Complaint, in the context of Plaintiff's allegations that the product labels … are misleading.") (internal quotations and alterations omitted).

"balanced, nutritious, and healthy."   *See id.* at ¶ 2.   This message is supposedly false and misleading because—according to Bates—there is too much sugar in Ensure®.   *Id.*   But the label of each Ensure® product discloses exactly how much sugar the product contains so that consumers or their doctors can decide whether Ensure® is right for their individual nutritional or health needs and, if so, which Ensure® product to buy.   For example, the Nutrition Facts Panel for Ensure® Complete (the product Bates alleges she purchased) expressly discloses not only that sugar is an ingredient but also how many grams of sugar the product contains:



*See* Ex. 3 (emphasis added).

    Apart from this factual disclosure, Ensure®'s labeling does not make *any* claims whatsoever about the product's sugar content.   *See* Exs. 2–7.   Bates nonetheless claims she was somehow deceived in purchasing a single Ensure® product (Ensure® Complete) based on various statements that do not mention sugar.   *See* Compl. ¶¶ 116-31.   On this theory, Bates asserts causes of action under New York's consumer protection laws (Counts I-II), as well as for breach of

warranty (Count III), negligent misrepresentation (Count IV), intentional misrepresentation (Count V), and unjust enrichment (Count VI). Abbott now moves to dismiss.

## LEGAL STANDARD

***Rule 12(b)(6).*** To survive a motion to dismiss, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Campbell v. Drink Daily Greens, LLC*, 2018 WL 4259978, at *2 (E.D.N.Y. Sept. 4, 2018) (citation omitted). Plausibility "requires more than a sheer possibility that a defendant has acted unlawfully," *Quiroz v. Beaverton Foods, Inc.*, 2019 WL 1473088, at *2 (E.D.N.Y. Mar. 31, 2019) (internal quotations omitted), and "'depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam) (citation omitted).

***Rule 9(b).*** Certain allegations—like fraud allegations—are also subject to the "heightened pleading standard" in Rule 9(b), which requires that "circumstances constituting fraud" be stated with "particularity." *Quiroz*, 2019 WL 1473088, at *2. Under this standard, a complaint must: "'(1) detail the statements (or omissions) that plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Id.* (citation omitted). The complaint must further allege "facts 'that give rise to a strong inference of fraudulent intent.'" *Id.* (citation omitted).

***Rule 12(b)(1).*** Challenges to a federal court's subject matter jurisdiction are "properly raised by way of a 12(b)(1) motion." *Morales v. Kimberly-Clark Corp.*, 2020 WL 2766050, at *3 (S.D.N.Y. May 27, 2020). It is well-settled that the plaintiff "bears the burden of proving subject matter jurisdiction," and grounds for dismissal include lack of standing. *See id.*; *Ebin v. Kangadis Food Inc.*, 2013 WL 3936193, at *1 (S.D.N.Y. July 26, 2013). It is black-letter law that plaintiffs

must demonstrate standing for each form of relief they seek. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed in gross.").

## ARGUMENT

### I.     In Light Of Ensure's Explicit Sugar Disclosures, No Reasonable Consumer Would Find The Challenged Statements Misleading.

A plaintiff asserting false labeling claims under New York law must "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Collishaw v. Coop. Regions of Organic Producer Pools*, 2022 WL 3290563, at *4 (S.D.N.Y. Aug. 11, 2022) (citations omitted); *Fink*, 714 F.3d at 741 ("Plaintiffs must establish that [the] allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances."). This "reasonable consumer" standard requires more than the possibility that "a label might conceivably be misunderstood by some few consumers." *See Beers v. Mars Wrigley Confectionery US, LLC*, 2022 WL 493555, at *3 (S.D.N.Y. Feb. 17, 2022) (citation omitted). At the pleading stage, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741.

In determining whether a reasonable consumer would have been misled, "context is crucial," and "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *See id.* at 742; *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017). New York law does not presume a rational consumer will "'simply assume' something about [a] product that a cursory inspection would not show to be true." *Mazella v. Coca-Cola Co.*, 548 F. Supp. 3d 349, 356 (S.D.N.Y. 2021) (citation omitted). Where a plaintiff alleges that one part of a product's label is misleading but another part would "dispel that confusion," New York courts ask whether the misleading element is ambiguous. *Melendez v. ONE Brands, LLC*, 2020

WL 1283793, at *6 (E.D.N.Y. Mar. 16, 2020).  If so, the clarification defeats the claim.  *Id.*  This clarification can come from a part of the packaging where "consumers are trained to look"—like the ingredients panel.  *Id.* (citation omitted).

As a matter of law, labeling thus is not misleading "where the manufacturer clearly and unambiguously provides notice (e.g., a disclaimer) of the contents of the package to the consumer"—such as sugar disclosures on a product's Nutrition Facts Panel.  *See Brown v. Kerry Inc.*, 2021 WL 5446007, at *6 (S.D.N.Y. Nov. 22, 2021) (dismissing New York claims based on sale of "Slightly Sweet" chai tea latte where "the Product's Nutrition Fact Panel lists the sugar and calorie contents of the beverage"), *report and recommendation adopted*, 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022); *Mazella*, 548 F. Supp. 3d at 357.

Under these principles of New York law, Bates cannot plead viable claims based on Ensure®'s sugar content, because every label on every Ensure® product at issue disclosed the amount of sugar that product contains.  *See* Exs. 2–7.  In addition, Bates does not even allege that consumers do not read the Nutrition Facts Panel.  *See generally* Compl.  Bates's theory about "healthy" claims and sugar content has been rejected by federal courts in this district (and others) because ingredient disclosures enable consumers to judge for themselves whether a product is healthy.  For example, in *Mazella v. Coca-Cola Co.*, 548 F. Supp. 3d 349 (S.D.N.Y. 2021), a consumer alleged iced tea beverages sold under the brand "Slightly Sweet" was misleading because it implied the product was low in sugar and, by extension, low in calories.  *See id.* at 357. Rejecting that claim at the motion to dismiss stage, the district court explained that "the label of the [p]roduct[s] includes information about the [p]roduct's sugar content and the number of calories the [p]roduct contains," including a Nutrition Facts Panel.  *Id.*  Because the product disclosed the number of calories and amount of sugar on the label—as here—the district court held

that "a reasonable consumer would not assume the definition of 'Slightly Sweet' is 'low sugar' or 'low calories.'" *Id.*

Likewise, in *Melendez v. ONE Brands, LLC*, 2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020), a consumer alleged that the statement "1g sugar" on the front label of nutrition bars misled consumers into thinking the bars were lower in carbohydrates or calories than they actually were. *Id.* at *7. There too the district court dismissed that claim on a Rule 12(b)(6) motion, explaining that the bars' carbohydrate and caloric contents are contained in the mandatory Nutrition Facts Panel. *Id.* "Because no reasonable consumer could have been misled about the bars' carbohydrate and caloric contents in light of the clarifying language found on the back panel of the bars' packaging," the false labeling claims failed as a matter of law. *See id.* (internal quotations and alterations omitted). *See also Solak v. Hain Celestial Grp., Inc.*, 2018 WL 1870474, at *1, *5 (N.D.N.Y. Apr. 17, 2018) ("[T]he list of ingredients included on the [p]ackaging makes abundantly clear that the [p]roduct contains only processed derivatives of the pictured vegetables.").

The outcomes of these cases make good sense. For decades, the FDA has mandated that a Nutrition Facts Panel be included on virtually each and every food product. *See N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 2008 WL 1752455, at *2 (S.D.N.Y. Apr. 16, 2008), *aff'd*, 556 F.3d 114 (2d Cir. 2009). To the extent a reasonable consumer was legitimately concerned about sugar, she would know precisely where to look for such information—particularly when no other statements on the label make any representation about sugar whatsoever. To hold otherwise would absolve consumers of responsibility for purchases that purportedly turn on sugar content, when they easily could (and the law expects them to) check the Nutrition Facts Panel, "which is exactly the spot consumers are trained to look for such information." *Melendez*, 2020 WL 1283793, at *7 (citation omitted).

To be sure, Bates will rely heavily on *LeGrand v. Abbott Laboratories*, --- F. Supp. 3d. ---, 2023 WL 1819159 (N.D. Cal. Feb. 8, 2023), the California case from which she was dismissed that allowed some California causes of action to proceed.  That decision, however, only considered claims under California law, which the district court acknowledged is split, with cases where similar claims were dismissed even in the Northern District of California.  *Id.* at *10 (referring to the "weight of authority" in the Northern District of California); *id.* at *1.  These other cases better accord with New York law because they too dismiss claims based on a theory of falsity that is inconsistent with ingredient disclosures on product labels.  *See, e.g.*, *Clark v. Perfect Bar, LLC*, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018), *aff'd*, 816 F. App'x 141 (9th Cir. 2020) ("The actual ingredients were fully disclosed.  Reasonable purchasers could decide for themselves how healthy or not the sugar content would be."); *Truxel v. Gen. Mills Sales, Inc.*, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019) ("[T]he actual ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own conclusions about whether or not the sugar content was healthy for them."); *Morgan v. Wallaby Yogurt Co.,* 2013 WL 5514563, at *8 (N.D. Cal. Oct. 4, 2013) ("If a reasonable consumer was concerned about sugar content, he or she can see how much sugar is in [the] product next to the ingredient list.").

Bates may also try to sidestep the plain effect of Ensure®'s sugar disclosures by arguing that reasonable consumers cannot understand the meaning of those disclosures because they are "not familiar with the science."  *See* Compl. ¶ 81; *see also id.* ¶¶ 82–89.  But this makes no sense.  On the one hand, Bates claims that Ensure® labels create the general misimpression that the product is "healthy" when it is allegedly not due to the product's sugar levels such that had the consumer known the supposed truth she would not have purchased Ensure® or paid less.  *See, e.g.*, *id.* ¶ 2.  On the other hand, though, Bates claims that "average" consumers cannot understand what

9

those sugar levels mean because they are not "intimately familiar with the scientific evidence regarding the health effects of consuming added sugar." *See id.* ¶¶ 83, 89, 90.  Bates cannot have it both ways:  A plaintiff cannot claim consumers would have made different purchasing decisions had they been informed about Ensure®'s sugar content while simultaneously alleging that consumers have no ability to understand the import of that same information.  The upshot of Bates's argument is that it would make no difference if Ensure® displayed the product's sugar content in large font on the front label.  Her sweeping theory would effectively negate the effect of ingredient disclosures on federally-mandated Nutrition Facts Panels, which is inconsistent with New York law.  All of Bates's claims should be dismissed with prejudice.

## II.   Bates's Claims Should Be Dismissed To The Extent They Are Based On Challenged Statements That Are Otherwise Inactionable Under New York Law.

### A.   Several Challenged Statements Are Indisputably True.

Bates's claims also fail to the extent they are based on certain challenged statements that are not plausibly false or misleading.

**"#1 Doctor Recommended Brand":**  Bates's challenge to the statement "#1 Doctor Recommended Brand" fails because the statement is indisputably true.  Bates argues that the statement is misleading because it "materially reinforces and lends credibility" to the notion that Ensure® is "healthy, effective at providing [ ] claimed benefits, and backed by scientific evidence."  Compl. ¶ 13.  But Bates does not plead any facts contradicting that Ensure® is the "#1 Doctor Recommended Brand" (*i.e.*, there is no allegation that doctors recommend another brand more often than Ensure®).  Courts regularly dismiss false labeling challenges in circumstances like these, where there is no allegation that a statement is false.  *See, e.g.*, *Brown v. Abbott Labs., Inc.*, 2011 WL 4496154, at *4 n.3 (N.D. Ill. Sept. 27, 2011) (dismissing challenge to statement "# 1 brand fed in hospitals" on infant formula, because that statement is "not even arguably

10

misleading"); *Beers*, 2022 WL 493555, at *3 (dismissing challenge to "Milk Chocolate" description on label because the plaintiff did not allege facts supporting that the product contained milk chocolate); *Solak*, 2018 WL 1870474, at *3 (dismissing claims where the "label simply presents the consumer with a factually true statement—that the Straws are somehow derived from vegetable-based products").

   **"With Nutrients for Immune System Support":**  It is also plainly true that Ensure® contains nutrients that support consumers' immune systems, including Zinc, Protein, and Vitamins A and D.  *See* Exs. 2-7.  Bates does not allege that Ensure® does ***not*** contain nutrients for immune support, and what she does allege—that Ensure® has more sugar than she would like—does not show that this statement is false or misleading.  That is fatal under New York law.  *See, e.g.*, *Harris v. Mondelēz Glob. LLC*, 2020 WL 4336390, at *2 (E.D.N.Y. July 28, 2020) (dismissing allegation that "Always Made With Real Cocoa" claim was misleading on Oreos, because "[p]laintiffs do not dispute that the challenged products are in fact made with cocoa, which is fatal to their case"); *Kennedy v. Mondelēz Glob. LLC*, 2020 WL 4006197, at *12 (E.D.N.Y. July 10, 2020) (holding that "the grahams are 'made with real honey' is a factually true statement about the product"); *Weiss v. Trader Joe's Company*, 2018 WL 6340758, at *4 (C.D. Cal. Nov. 20, 2018) (dismissing claims where "[t]he label states that the Water 'hydrates,' and Plaintiff does not dispute that fact"), *aff'd*, 838 F. App'x 302 (9th Cir. 2021).

   *Morris v. Walmart Inc.*, 2020 WL 5645812 (N.D. Ala. Sept. 22, 2020) is instructive.  There, plaintiffs challenged labels for Walmart's "Parent's Choice Pediatric Shake."  *Id.* at *1, *5. Although the plaintiffs alleged that high sugar content and "empty calories" meant the shakes did not provide balanced nutrition or nutrition to help kids grow, the court dismissed, reasoning that the relevant question was not whether the shakes were the healthiest delivery mechanism for the

vitamins and minerals they contained but rather whether they provided nutrition to help children grow, as the label stated. *Id.* Because even "large amounts of sugar and empty calories do not necessarily prevent the shakes from providing vitamins and minerals to help children thrive," the court held that the plaintiffs had failed to plausibly allege falsity. *Id.* So too here.

**"Discover More at Ensure.com," "Learn About Ensure Complete Nutrition and Benefits," and "Chat Live with a Registered Dietitian About Nutrition":** None of these challenged statements purports to describe the product at all; all are instructions for how customers can learn more about the product. Bates alleges no theory under which such statements can support a false labeling claim. All claims based on them should be dismissed.[3]

> B.   Several Challenged Statements Are Too Vague to Support a Claim.

Under New York law, "generalized," "subjective," "non-specific," "unmeasurable," and "vague" statements constitute puffery, which cannot support a false advertising claim. *See Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 153-54 (S.D.N.Y. 2022). Here, several challenged

---

[3] Under California law, *LeGrand* reached a different result with respect to certainty of the statements that are indisputably true (though did dismiss "Discover More at Ensure.com"). For example, the court held that the statement "#1 Doctor Recommended Brand" can still be misleading even if literally true. Respectfully, the *LeGrand* court got it wrong. There is nothing misleading about the statement: the fact that doctors recommend Ensure® does not imply they have any view about the product's ***sugar content***. That is precisely why a California state court dismissed a nearly identical challenge to the marketing of Abbott's PediaSure products as the "#1 Pediatrician Recommended Brand." *See* Ex. 8, Order re Demurrer to Pl.'s Compl. & Alternative Mot. to Strike, *VanCleave v. Abbott Laboratories*, No. 19CV345045 (Cal. Super. Ct. Dec. 23, 2019). There, the court at the pleading stage dismissed a challenge to the statement "#1 Pediatrician Recommended Brand" because the plaintiff failed to allege the statement was "false or incorrect." The court explained that plaintiffs were "read[ing] more into the statement than what is actually stated" in suggesting that it implied widespread pediatrician endorsement of the health benefits of the product. *Id.* at 7.

statements are exactly that—namely, ones that use the words "complete" or "advanced"[4] as well as qualified representations that are not subject to precise measurement.

The modifier "complete," which is a component of several challenged statements, is a textbook example of puffery that cannot support a false labeling claim.  In *Blue Buffalo Co. Ltd. v. Nestlé Purina Petcare Co.*, for example, the court rejected a challenge virtually identical to Bates's here, holding that "whether something is complete or balanced nutrition is merely an opinion about quality and is not capable of being proven true or false."  2015 WL 3645262, at *10 (E.D. Mo. June 10, 2015).  That is consistent with New York federal court authority holding that "advertising terms like 'complete' are puffery because they are subjective and cannot be proven true or false."  *See Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009); *accord Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 541 (S.D.N.Y. 2018).

This same logic has led courts to dismiss claims premised on descriptions of a product as "nutritious," "superior," and "premium."  *See, e.g.*, *Solak*, 2018 Wl 1870474, at *6 ("smart and wholesome" is not "a factual representation upon which a consumer might rely"); *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999) (advertising that a product was "Premium Quality" was puffery and not actionable for a breach of express warranty claim).  Because descriptions of Ensure® as "advanced" are akin to those statements, they cannot form the basis of any claim under New York law.

Likewise, Bates challenges several qualified representations about potential uses of Ensure®—specifically, the statements "most advanced nutritional product, ***designed to help***

---

[4] Specifically, the challenged statements with "complete" or "advanced" are: "Complete," "Complete, Balanced Nutrition for everyday health," "complete balanced nutrition," "Complete Balanced Nutrition shake," "Complete, Balanced Meal Replacement," "Complete, Balanced Nutrition—For … Heart … Immune," "advanced nutrition shake," and "most advanced nutritional product."

rebuild your strength and energy from the inside, with an All-in-One blend to support your health," and "[r]ecommend[s] 2 bottles per day as *part* of a healthy diet."  *E.g.*, Compl. ¶¶ 23 (emphasis added).   Such claims are incapable of measurement from the objective perspective of the reasonable consumer:  Ensure® undoubtedly *can* be part of a healthy diet and help rebuild a consumer's strength and energy, spending upon their overall diet; but that necessarily varies from consumer to consumer, and this is incapable of precise measurement on an objective basis.[5]

### III.   Bates's Claims Are Preempted By Federal Law To The Extent They Depend On Representations About Nutrient Content.

Many of the challenged statements constitute nutrient content statements that are preempted by federal law.  Where a federal statute expressly preempts state law, federal law governs.  *See Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433, 434 (2d Cir. 2015).  The FDCA expressly preempts states from establishing "requirement[s] respecting," among other things, "implied nutrient [] claim[ s ]," which are statements that (1) "[s]uggest[] that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices," and (2) "[are] made in association with an explicit [or implicit] claim or statement about a nutrient[.]" 21 U.S.C. § 343-l(a)(5); 21 U.S.C. § 343(r)(l); 21 C.F.R. §§ 101.13(b)(2)(ii), 101.65(d)(1)(ii).   If a statement, viewed in context, "suggest[s] that [the] food because of its nutrient content may help consumers maintain healthy dietary practices" and is "made in [association] with an explicit or implicit claim or statement about a nutrient," it is an implied nutrient claim.  21 C.F.R. § 101.65(d)(l); *see* FDA Guidance for Industry: A Labeling Guide for Restaurants & Other Retail Establishments Selling

---

[5] *LeGrand* held that these qualified statements were actionable in light of plaintiff's allegation that Ensure® products "are, in fact, not part of a healthy diet, and are harmful to consumers' health." 2023 WL 1819159, at *12.  But neither the plaintiff nor the district court explained why Ensure® could *not* be *part* of a healthy diet or how does not *help* rebuild energy and strength, qualifications that render them inactionable under New York law.

Away-From-Home Foods, 2008 WL 2155726, at *10 (April 2008) ("nutritious" is an implied

nutrient content claim when used "in association" with a statement about a nutrient).

Under that rubric, Bates's challenges to various labeling claims are expressly preempted:[6]

- **Ensure® Complete**: The statement "Complete, Balanced Meal Replacement" on Ensure® Complete is made in connection with a chart identifying various nutrients in the product (*e.g.*, "Excellent Source of Zinc, Vitamin A, and Antioxidants Vitamins C, E, and Selenium," "30g High-Quality Protein," "4g Comfort Fiber Blend," and "Vitamin D and Calcium"), as are additional statements about benefits associated with those nutrients ( "Immune," "Muscle," "Heart," "Digestion," and "Bone"). *See* Compl. at 4; *see* Ex. 3.



- **Ensure® Enlive Advanced Nutrition Shake**: The statements "advanced nutrition shake" and "All In One … Heart[,] Immune[,] and] Digestion" are made with statements about the product's nutrient content—specifically, "20g Protein" and "26 Vitamins & Minerals." *Id.* Perhaps most obviously, the statements "Heart," "Immune," and "Digestion" appear beside the nutrients that provide benefits related to those items. *Id.* at 4; *see* Ex. 4. [7]

---

[6] Abbott does not contend that any statement using the term "health" is an implied nutrient content claim, meaning Plaintiff's theory of falsity under 21 C.F.R. § 101.65(d) fails.

[7] Bates alleges that Abbott improperly makes nutrient content claims that include the term "health," when Ensure® does not meet the regulatory requirements for such claims. Because Abbott does



- **Ensure® Compact**: The statement "therapeutic nutrition shake" on the multi-pack is made in connection with descriptions of the product's nutrient content, including "9g Protein" and "26 Vitamins & Minerals." *Id.* at 8. The phrase "Complete, Balanced Nutrition" likewise appears beside those statements and expressly states that it is being contrasted with the nutritional characteristics of "Ensure Original." *Id.*; *see* Ex. 5.



---

not contend here that the statements "All-in-One blend to support your health" or "Use as part of a healthy diet" are nutrient content claims, Bates's theory fails.

.

- ***Ensure® Clear***: The statement "nutrition drink" is made with descriptions of this product's nutrient content, including "8g Protein" and "0g Fat." *Id.* at 9 (¶¶ 29-31); *see* Ex. 6.



- ***Ensure® Original Powder***: The description of Ensure® Original as a "nutrition powder" is made with a description of the product's nutrients—notably, "9g Protein" and "25 Vitamins & Minerals." *Id.* at 10 (¶¶ 42-64); *see* Ex. 7.



17

These statements are made in connection with representations about the nutrient content of the product, which are expressly permitted by federal law, meaning that any state law challenge premised on these statements is preempted.[8]

## IV.   Bates Has Not Adequately Pleaded Her Individual Causes Of Action.

### A.   Bates's Intentional Misrepresentation Claim Should Be Dismissed For Failure to Plead Fraudulent Intent Under Rule 9(b).

To state a fraud claim under New York law, a Bates must allege facts showing that Abbott "intended to defraud" consumers in making the challenged statements on Ensure®. *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F.Supp.3d 154, 165 (S.D.N.Y. 2021). Because fraud claims are subject to the heightened particularity requirement of Rule 9(b), "the Second Circuit has 'repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *See Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021) (citation omitted); *Brown*, 2021 WL 5446007, at *10. This requirement applies to Bates's causes of action for intentional misrepresentation (*i.e.*, common law fraud). *See Barreto*, 2021 WL 76331, at *8; *Brown*, 2021 WL 5446007, at *10.

Bates's intentional misrepresentation claim falls well short of that standard. Bates makes only vague allegations that the challenged statements were "intended to appeal to consumers interested in health and wellness and intended to convince those consumers that the [p]roducts are … healthy," and that "Abbott intends that [Bates] and other consumers rely on" those statements.

---

[8] The *LeGrand* court largely agreed, dismissing several challenged statements on preemption grounds. 2023 WL 1819159, at *8-9. In Abbott's respectful view, *LeGrand* should have gone further, as all of the statements that Abbott challenges appear in close enough proximity to nutrient references on the product's packaging. *See, e.g.*, *VanCleave*, No. 19CV345045, at 5 (holding that the placement of the statement "Nutrition to Help Fill Gaps" "directly above statements regarding protein and vitamins & minerals shows a connection between the statements and makes the nutrition statements implied nutrient content claims").

*See* Compl. ¶¶ 78, 166.  But those "conclusory allegation[s] fall[] short of the Rule 9(b) standard for pleading fraudulent intent."  *See Brown*, 2021 WL 5446007, at \*10.  For instance, in *Brown*, the court dismissed a New York fraud claim where the plaintiff "allege[d] only that Oregon Chai's fraudulent intent is 'evinced by its failure to accurately identify the Product on the front label, when it knew its statements were neither true nor accurate and misled consumers.'"  *Id.*  Similarly, in *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395 (S.D.N.Y. 2022), the court held that an allegation that defendant "marketed [its recyclable] bottles to 'capitalize on consumer demand for "green" products'" was "insufficient to give rise to a strong inference of fraudulent intent."  *Id.* at 417.  Here too Bates's barebones allegations are not enough to support a strong inference of fraudulent intent under the heightened standards of Rule 9(b).  *See, e.g.*, *Turnipseed v. Simply Orange Juice Co.*, 2022 WL 657413, at \*7 (S.D.N.Y. Mar. 4, 2022); *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 249–50 (S.D.N.Y. 2021); *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d. 370, 391–,92 (S.D.N.Y. Feb. 2, 2021); *Barreto*, 2021 WL 76331, at \*8; *Twohig*, 519 F. Supp. 3d. 154, 164–65.  On this basis, Bates's claim for intentional concealment should be dismissed.

B.     A New York Negligent Misrepresentation Claim Requires a Special Relationship, Which Bates Does Not Adequately Allege.

Under New York law, a plaintiff alleging a negligent misrepresentation claim must plead, *inter alia*, "the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff."  *Turnipseed*, 2022 WL 657413, at \*6 (citation omitted).  This "privity-like relationship" must be more than that of buyer and seller.  *See id.* ("[G]enerally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties." (citation omitted)); *Spurck v. Demet's Candy Co., LLC*, 2022 WL 2971957, at \*4 (S.D.N.Y. July 27, 2022) ("[T]he relationship between Defendant, as the

manufacturer and seller, and Plaintiff as the buyer, does not rise to the level of the kind of special relationship—approaching that of privity—that would impose a duty to speak on Defendant."); *Izquierdo v. Mondelēz Int'l, Inc.*, 2016 WL 6459832, at *9 (S.D.N.Y. Oct. 26, 2016).

Here, Bates pleads nothing more than an attenuated consumer-manufacturer connection with Abbott, alleging only that she purchased Ensure® Complete at third-party retailers.  Compl. ¶ 116.  While Bates alleges that Abbott "is a large sophisticated company that holds itself out as hav[ing] expert knowledge regarding the impact of consuming the [p]roducts," Compl. ¶ 108, it is not enough to allege that a defendant "hold[s] itself out as having special knowledge and experience in the sale of the product type." *Myers v. Wakefern Food Corp.*, 2022 WL 603000, at *6 (S.D.N.Y. Mar. 1, 2022).  To the contrary, "no duty of care arises" when the alleged misrepresentation is "directed at a faceless or unresolved class or persons." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005) (citation and internal quotation marks omitted); *see also, e.g.*, *Twohig*, 519 F. Supp. 3d at 166–67 (rejecting claim of special relationship based on allegation that defendant "held itself out as having special knowledge and experience in the production, service, and/or sale of the product type" (citation omitted)); *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *6–7 (E.D.N.Y. Feb. 13, 2020) (dismissing negligent misrepresentation claim based on labeling statements and reasoning that "BEF's status as a trusted brand . . . does not give rise to a duty to impart correct information").  What Bates alleges is exactly the sort of run-of-the-mill commercial relationship that courts in New York routinely reject as the basis for a negligent misrepresentation claim.  Her negligent misrepresentation claim should be dismissed on this basis.

C.     As Bates Did Not Provide Pre-Suit Notice, Her Express Warranty Claim Fails.

Bates's New York express warranty claim under N.Y. U.C.C. § 2-313 fails because she did not provide Abbott pre-suit notice of her claim.  To recover on an express warranty claim under

New York law, a buyer of a purportedly mislabeled product "must within a reasonable time after [s]he discovers or should have discovered any breach ***notify the seller*** of breach ***or be barred from any remedy.***"  N.Y. U.C.C. § 2-607(3)(a) (emphasis added); *Richards v. Johnson & Johnson, Inc.*, 2018 WL 2976002, at *8 (N.D.N.Y. June 12, 2018) ("Plaintiff's failure to notify Cordis is cause for dismissal of the express and implied warranty claims …."); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013).  Bates, though, does not allege when or how she provided pre-suit notice to Abbott about the alleged defects with the Ensure® product she purchased, let alone the ones she did not.  Her express warranty claim thus must be dismissed.  *See, e.g.*, *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 585–86, n.11 (S.D.N.Y.  2021) (dismissing warranty claim where "there [wa]s no indication in the pleadings or the briefing that [p]laintiffs provided timely notice of the breach to [d]efendant"); *Campbell*, 516 F. Supp. 3d. at 391 (dismissing warranty claim where "[p]laintiff ha[d] not adequately pleaded that she in fact provided notice"); *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d. 261, 283 (E.D.N.Y. 2021) (dismissing warranty claim where "plaintiff failed to allege any facts supporting the allegation that she notified defendant of the alleged breach within a reasonable time after its discovery").

    D.    <u>Plaintiff's Duplicative Unjust Enrichment Claim Fails.</u>

In New York, courts commonly dismiss unjust enrichment claims that are duplicative of claims under GBL §§ 349 and 350.  *See Beers*, 2022 WL 493555, at *7 ("[C]ourts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims.") (citation omitted)).  Here, Plaintiff alleges unjust enrichment based on the same allegations underlying their GBL claims.  *Compare* Compl. ¶¶ 141–53 (alleging GBL violations premised on alleged misleading labeling resulting in financial injury) *with id.* ¶ 196 (alleging unjust enrichment because "Abbott's financial benefits resulting from their unlawful and inequitable conduct are economically traceable to Plaintiff's and Class Members' purchases of the Ensure Nutrition

Drinks"). Because these allegations are duplicative, Bates's unjust enrichment claim should be dismissed. *See, e.g.*, *Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *5 (S.D.N.Y. Jan. 19, 2018) ("The essence of Borenkoff's unjust enrichment claim is that (1) she purchased defendants' food items as a result of their material omissions, and (2) defendants[] unjustly retained the revenue from those purchases. Those allegations are entirely duplicative of Borenkoff's GBL § 349 claim, and therefore the unjust enrichment claim must be dismissed under New York law."); *Brown*, 2021 WL 5446007, at *10; *see also Nelson*, 246 F. Supp. 3d at 679; *Melendez*, 2020 WL 1283793, at *8.

## V.      Bates Lacks Article III Standing To Pursue Injunctive Relief.

In the Second Circuit, "injunctive relief is only proper when a plaintiff, lacking an adequate remedy at law, is likely to suffer from injury." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146–47 (2d Cir. 2020). A plaintiff cannot rely upon "past injury" to lay claim to injunctive relief; she must adequately allege a "threat of future injury." *Id.* In this sense, "the prospective-orientation of the analysis is critical." *Id.*

Here, Bates fails to plead anything approaching a future injury. She expresses her "wish[] to purchase healthy nutrition products" and alleges she "would purchase Ensure Nutrition Drinks in the future if the products were as represented." *See* Compl. ¶ 128. But even crediting that allegation—which is difficult to do—Bates indisputably now knows both the sugar content of Ensure® products as well as the alleged health effects. She therefore cannot plausibly claim that she is at risk of being misled in the future, which it is her burden to show.

Consumers like Bates "who were misled by deceptive food labels lack standing for injunctive relief because there is no danger that they will be misled in the future." *Alce v. Wise Foods, Inc.*, 2018 WL 1737750, at *6 (S.D.N.Y. Mar. 27, 2018) (citation omitted). In other words, Article III does not permit a theory of standing premised on "fool me once, shame on you, fool me

twice, shame on you." *Id.* at *6.  This common-sense principle is well-established.  For example, in *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020), the Second Circuit vacated an injunctive-relief class settlement because "not all class members st[ood] to benefit from injunctive relief." *Id.* at 143.  As the circuit panel explained, "[s]upposing that [consumers] have been deceived by the product's packaging once, they will not again be under the illusion" they once were, meaning any future purchases will be made "with exactly the level of information that [consumers] claim they were owed from the beginning." *Id.* at 148; *see also, e.g.*, *Kommer v. Bayer Consumer Health*, 710 Fed. App'x 43, 44 (2d Cir. 2018) *Seljak v. Pervine Foods, LLC*, 2023 WL 2354976, at *6 (S.D.N.Y. Mar. 3, 2023) ("[E]ven if plaintiffs' complaint did include allegations of future injury, there would be no likelihood that plaintiffs would subject themselves to future injury by repurchasing defendant's allegedly deceptive products now that they are aware of the true product contents.").  Because Bates is not threatened with future injury, her injunctive relief claim should be dismissed for lack of Article III standing.

## CONCLUSION

For these reasons, Abbott respectfully requests that the Court dismiss the complaint.

Dated: June 5, 2023                    Respectfully submitted,

                                       */s/ Michael A. Glick*
                                       Michael A. Glick
                                       1301 Pennsylvania Avenue NW
                                       Washington, DC 20004
                                       Telephone:  (202) 389-5000
                                       Fax:  (202) 389-5200
                                       michael.glick@kirkland.com

                                       *Attorneys for Abbott Laboratories*

24

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this 5th day of June 2023, a true and correct copy of the foregoing document and attachments were served upon all counsel of record.

*/s/ Michael A. Glick*

_____

Michael A. Glick