**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LARISSA BATES, on behalf of herself, all others**
**Similarly situated, and the general public,**

**Plaintiff,**

**v.**                                                      **1:23-CV-387**
                                                            **(FJS/CFH)**
**ABBOTT LABORATORIES,**

**Defendant.**
_____

**APPEARANCES**                          **OF COUNSEL**

**FITZGERALD MONROE FLYNN PC**          **CAROLINE S. EMHARDT, ESQ.**
2341 Jefferson Street, Suite 200         **JOHN J. FITZGERALD, IV, ESQ.**
San Diego, California 92110              **MALENIE RAE MONROE, ESQ.**
Attorneys for Plaintiff                  **PAUL K. JOSEPH, ESQ.**
                                         **TREVOR FLYNN, ESQ.**

**KIRKLAND & ELLIS LLP**                 **MICHAEL GLICK, ESQ.**
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER[1]**

**I. INTRODUCTION**

In her complaint, Plaintiff alleges claims of misrepresentations and other consumer-

related false claims against Defendant Abbott Laboratories, the manufacturer of Ensure-brand

nutrition drinks.  Plaintiff contends that the labels on the Ensure packaging misstate the health

_____

[1] All references to page numbers of documents in the record are to the page numbers that the
Court's Electronic Filing System generates and are located in the upper right-hand corner of
those pages.

benefits of the drinks.  Defendant "markets" the products using "health and wellness representations such as '#1 Doctor Recommended Brand,' 'Complete, Balanced Nutrition for everyday health,' and drink '2 bottles per day as part of a healthy diet.'"  *See* Dkt. No. 1, Complaint, at ¶ 1.  Defendant also markets Ensure "as providing specific benefits, like supporting immune, heart, and digestive health." *Id.*  Plaintiff alleges that this marketing language is "designed and intended to convince consumers Ensure Nutrition Drinks are healthy food choices." *Id.*  Plaintiff contends that Defendant's claims are "false and misleading[.]" *See id.* at ¶ 2.  "[A] vast body of scientific evidence" shows that beverages with sugar sweetening actually "harms . . . overall health," but Defendant "adds up to 22 grams of sugar per serving to Ensure Nutrition Drinks." *See id.*  Thus, Plaintiff claims, Defendant's "representations that the Ensure Nutrition Drinks are balanced, nutritious, and healthy, are false and misleading." *See id.*

Plaintiff further alleges that Defendant "is well aware consumers seek out and prefer healthful foods and beverages, and are willing to pay more for, or purchase more often, products marketed and labeled as healthy." *See id.* at ¶ 10.  Aware of these desires, Plaintiff claims, Defendant "leverages this knowledge in its marketing strategy for the Ensure Nutrition Drinks," promoting them through the above-cited phrases. *See id.* at ¶ 11.

Despite these claims, Plaintiff alleges, Defendant's Ensure products contain a high degree of added sugar.  Plaintiff points to various Ensure products that Defendant produces.  Defendant's Ensure Original Nutrition Shakes, for example, contain "220 calories, 6 grams of fat, and 9 grams of added sugar, meaning that 16.5% of their calories come from added sugar." *See id.* at ¶ 12.  By labeling these products as "nutrition shakes" that provide "complete, balanced nutrition for everyday health," Defendant "convey[s] that the Products as a whole are healthy and will benefit rather than detriment health." *See id.* at ¶ 13.  Combined with the "#1 Doctor

Recommended Brand" labeling, "[t]hese statements, both individually and in combination, convey that the Ensure Original Nutrition Shakes are beneficial to health and are formulated with a nutrient profile that is in line with authoritative medical or health recommendations." *See id.* Plaintiff also contends that, because the shakes contain 6 grams of fat, they are not eligible "to bear healthy nutrient content claims pursuant to 21 C.F.R. § 101.65(d)." *See id.* at ¶ 15.

Defendant's Ensure Complete Nutrition Shakes, sold in a number of flavors, contain 350 calories and between 18 and 21 grams of added sugar. *See id.* at ¶ 16. Complete Nutrition Shakes thus contain between 20.6% and 24% of their calories in added sugar. *See id.* Despite this high percentage of added sugar, Defendant's labeling "touts each flavor as 'Complete' 'nutrition shake' that provides a 'Complete, Balanced Meal Replacement' for, *inter alia,* 'Immune,' 'Digesti[ve]' and 'Heart,' health; and 'Complete, Balanced Nutrition-For-. . . Heart . . . Immune' health." *See id.* at ¶ 17 (emphasis omitted). The labels further claim that "'Complete is Ensure's most advanced Complete, Balanced Nutrition shake" and that the drink is the "#1 Doctor Recommended Brand." *See id.* (emphasis omitted). Multi-packs of the product, Plaintiff alleges, "are sold in an outer cardboard box that further invites consumers to 'Discover More at Ensure.Com' in order to 'Learn About Ensure Complete's Nutrition and Benefits' and 'Chat Live with a Registered Dietitian About Nutrition.'" *See id.* (emphasis omitted). Plaintiff alleges that "[t]hese statements, both individually and in combination, convey that . . . Ensure Complete Nutrition Shakes are beneficial to health generally." *See id.*

Those multi-packs also "bear a prominent 'shield' graphic" that states "with Nutrients for Immune System Support." *See id.* at ¶ 18 (emphasis omitted). Plaintiff alleges that the statement and the shield, which is "a symbol commonly used by health care providers like paramedics and health insurance companies like Blue Cross Blue Shield" work "together [to] convey that Ensure

Complete Nutrition Shakes benefit rather than detriment immune health and are generally healthy." *See id.*  Plaintiff claims that the labeling's focus on "purported health benefits" ignores the "health charms of the products' added sugar content . . . conveys to consumers that the Ensure Complete Nutrition Shakes provide the promised health benefits notwithstanding their added sugar content." *See id.* at ¶ 19.  Moreover, Plaintiff alleges, the Ensure Complete Nutrition Shakes all "contain 8 grams of fat and 1.5 grams of saturated fat and are thus ineligible to bear healthy nutrient content claims pursuant to 21 C.F.R. § 101.65(d)." *See id.* at ¶ 20.

Defendant also produces Ensure Enlive Advanced Nutrition Shakes in a number of flavors. *See id.* at ¶ 21.  The drinks contain either 20 or 22 grams of added sugar in their 350 calories. *See id.*  "22.9% to 28.6% of their calories come from added sugar." *See id.* Defendant's labeling describes these drinks as "an 'advanced nutrition shake' that provides 'All in One . . . Heart[,] Immune[, and] Digestion' support." *See id.* at ¶ 22 (emphasis omitted).  The bottle's side declares that the drink is Defendant's "'most advanced nutritional product' with an 'All-in-One blend to support your health.'" *See id.* (emphasis omitted).  The labeling "'Recommend[s] 2 bottles per day as part of a healthy diet.'" *See id.* (emphasis omitted).  The labels also declare the product the "'#1 Doctor Recommended Brand.'" *See id.* (emphasis omitted).  Plaintiff alleges that drinking two bottles per day "would contribute 40 to 44 grams of added sugar to a person's diet." *See id.*  An earlier version of this product contained labeling that declared the Enlive Advanced Nutrition Shake was Defendant's "'most advanced nutritional product, designed to help rebuild your strength and energy from the inside, with an All-in-One blend to support your health,'" and recommended consumption of two bottles a day. *See id.* at ¶ 23 (emphasis omitted).  Plaintiff alleges that this labeling promised that Ensure Enlive Advance Nutrition Shakes contain "'complete, balanced nutrition'" and promoted heart, immune, and

digestive health.  *See id.* (emphasis omitted).  As such, Plaintiff claims, the labeling declared that the drinks were "beneficial to overall health."  *See id.* at ¶ 24.  Defendant made these claims despite the added sugar content in the drinks.  *See id.* at ¶ 25.  The drinks also contain 11 grams of fat and 1.5 grams of saturated fat and are thus ineligible to bear healthy nutrient content claims pursuant to 21 C.F.R. § 101.65(d)."  *See id.* at ¶ 26.

Another of Defendant's products, Ensure Compact Therapeutic Nutrition Shakes, comes in a number of flavors, including Milk Chocolate and Vanilla.  *See id.* at ¶ 27.  Both of those products have "220 calories and either 9 or 10 grams of added sugar, meaning that between 16.4% and 18.2% of their calories come from added sugar."  *See id.*  Defendant labels the products as "'therapeutic.'"  *See id.* at ¶ 28.  Plaintiff alleges that, since the dictionary definition of "therapeutic" is "'relating to the healing of disease,'" Defendant's label "conveys that the Ensure Compact Nutrition Shakes are healthy, rather than detrimental to health."  *See id.*  Further statements that claim the product is the "#1 Doctor Recommended Brand" and which promise "'complete, balanced nutrition'" allegedly "convey that the Ensure Compact Therapeutic Nutrition Shakes are healthy and effective at providing the claimed benefits."  *See id.* (emphasis omitted).  Defendant promotes these alleged benefits "while omitting information regarding the health harms of their added sugar content."  *See id.* at ¶ 29.  By omitting that information, Plaintiff claims, Defendant "conveys to consumers that the Ensure Compact Therapeutic Nutrition Shakes provide the promised health benefits notwithstanding their added sugar content."  *See id.*  The products also contain 6 grams of fat and are ineligible to bear healthy nutrient content claims pursuant to 21 C.F.R. § 101.65(d)."  *See id.* at ¶ 30.

Defendant also sells Ensure Clear Nutrition Drinks in a variety of flavors, including Blueberry Pomegranate and Mixed Fruit.  *See id.* at ¶ 31.  Plaintiff alleges that both products

"contain 250 calories and 13 grams of added sugar, meaning that 40% of their calories are from added sugar." *See id.* Despite this high content of added sugar, Defendant's labels describe the product as a "'nutrition drink'" and the "#1 Doctor Recommended Brand." *See id.* at ¶ 32 (emphasis omitted). These statements, Plaintiff claims, serve to "convey to consumers that the Ensure Clear Nutrition Drinks are healthy and are effective at providing the claimed benefits." *See id.* Those messages also "convey[] to consumers that the Ensure Clear Nutrition Drinks provide the promised health benefits notwithstanding their added sugar content." *See id.* at ¶ 33.

Defendant also manufactures vanilla-flavored Ensure Original Nutrition Powder. *See id.* at ¶ 34. That product "contains 180 calories and 18 grams of added sugar, meaning that 20.8% of its calories come from added sugar." *See id.* Defendant promotes this product as a "'nutrition powder'" that offers "'Complete, Balanced Nutrition – for everyday health.'" *See id.* at ¶ 35 (emphasis omitted). The product's label declares the product as the "#1 Doctor Recommended Brand." *See id.* (emphasis omitted). Defendant further claims that "'Each serving of #1 Dr. Recommended Ensure is a source of complete, balanced, nutrition including 26 essential vitamins and minerals. Use this convenient mix nutrition powder for supplemental use between or with meals.'" *See id.* at ¶ 35 (emphasis omitted). Plaintiff contends that these labels tell consumers "that the product as a whole is healthy and will benefit rather than detriment health." *See id.* The labels also allegedly tell "consumers that Ensure Original Nutrition Powder provides the promised health benefits notwithstanding its added sugar content." *See id.* at ¶ 36. The product "contains 9 grams of fact and 1.5 grams of saturated fat per serving and is thus ineligible to bear healthy nutrient content claims pursuant to 21 C.F.R. § 101.65(d)." *See id.* at ¶ 37.

Plaintiff points to a number of scientific studies and reports to argue that products sweetened with sugar are detrimental to people's health and that "'limiting'" drinks sweetened

with sugar has been promoted in "'public health policy and scientific documents as a prudent strategy for promoting optimal nutrition and health.'"  *See id.* at ¶ 38 (quoting Zheng, M., et al., "Substitution of SSB with other beverage alternatives," Academy of Nutrition and Dietetics (2015)).  Plaintiff's Complaint details the findings of various studies that discuss the consequences of added sugar in diets for cardiovascular health, the immune system, digestion, and obesity.  *See id.* at ¶¶ 39-68.  Plaintiff also points to advice from various health authorities that recommends limiting added sugar in diets, particularly in sugar-sweetened beverages.  *See id.* at ¶¶ 69-77.

Plaintiff alleges that Defendant's representations of the health effects of Ensure and the benefits of the products for "immune, digestive, and heart health, are false, or at least highly misleading."  *See id.* at ¶ 79.  Plaintiff alleges that, since governmental and medical experts contend that "added sugar consumption should be limited to less than 5% to 10% of daily calories for a healthy diet," "it is misleading for [Defendant] to claim that its Ensure Nutrition Drinks provide 'complete' and 'balanced' nutrition when between 16.4% and 40% of their calories come from added sugar."  *See id.* at ¶ 80.  Plaintiff further contends that calling the products "'nutrition'" drinks and adding messages on labels claiming the products are doctor recommended tells consumers that Ensure drinks are "healthy, meaning at least that they will not" be detrimental to a consumer's health.  *See id.* at ¶ 81.  This claim from Defendant contradicts scientific evidence that "convincingly shows that consuming sugar-sweetened beverages . . . causes serious, negative health consequences."  *See id.*  The "health and wellness claims are deceptive," Plaintiff alleges, since they imply that consumers will benefit from drinking Ensure, but the literature suggests that consumers will be harmed from them.  *See id.*  Given the evidence that added sugar products harm cardiovascular health, Plaintiff also contends that claims about

benefits to heart health on the Ensure labeling are also false and/or misleading. *See id.* at ¶ 82. The labels are especially misleading, Plaintiff claims, because an average consumer lacks knowledge of the scientific literature concerning added sugar. *See id.* at ¶¶ 83-85. Nutrition labels do not aid consumers in obtaining information about the dangers of added sugar, Plaintiff insists, since studies have shown that most consumers lack the capacity to interpret such labels properly. *See id.* at ¶¶ 86-90. Ensure labels, which contain representations about health benefits and focus on vitamins and minerals contained in drinks, only add to consumer confusion about the health benefits of such beverages. *See id.* at ¶¶ 91-94. Studies have shown that consumers do not have the skills to interpret the information on labels anyway. *See id.* at ¶¶ 95-96. Agencies and health professionals have noted that Defendant's labeling serves to mislead consumers. *See id.* at ¶¶ 97-102.

Furthermore, Plaintiff contends that recommending two bottles of Ensure a day as part of a healthy diet, as Defendant does, is "unfair and deceptive." *See id.* at ¶ 103. Plaintiff alleges that studies have shown that most Americans consume too much added sugar, that Defendant fails to inform consumers about the "countervailing and detrimental effects of added sugars on overall health, and immune digestive and heart health," and that Defendant violates a "duty" to consumers by suggesting the drinks are beneficial to health "without revealing directly relevant information regarding the harmful effects of added sugar described" in the Complaint. *See id.* at ¶¶ 104-106. Plaintiff further alleges that Ensure's labeling violates New York and federal law. *See id.* at ¶¶ 110-115.

Plaintiff asserts that she bought the products in question in the Albany, New York area beginning in mid-2018 and ending in early 2022. *See id.* at ¶ 116. She claims that she bought the products because she sought a healthy beverage. *See id.* at ¶ 117. She relied on Defendant's

claims about the "'complete'" nutrition contained in these "'Doctor Recommended'" products and believed that in drinking the products she would consume "complete, balanced nutrition" that would be "beneficial rather than detrimental to her health when consumed regularly."  *See id.*  Plaintiff alleges that Defendant's claims about the healthful nature of the drinks were false and deceptive.  *See id.*  Plaintiff, who "is not a nutritionist, food expert, or food scientist," did not have the sort of "specialized knowledge" that would allow her to understand the scientific literature that undermined Defendant's claims about the products.  *See id.* at ¶ 118.  She paid more for Ensure products as opposed to other similar drinks because of their supposed health benefits.  *See id.* at ¶¶ 121, 124.  She alleges that she would not have bought the products if she had received accurate information about their health effects or if she had known that their labeling violated state and federal law.  *See id.* at ¶¶ 120, 125.[2]

The Complaint contains six causes of action: (1) Count One for unfair and deceptive business practices pursuant to New York General Business Law § 349; (2) Count Two for false advertising pursuant to New York General Business Law § 350; (3) Count Three for breach of express warranty under New York's version of the Uniform Commercial Code; (4) Count Four for negligent misrepresentation; (5) Count Five for intentional misrepresentation; and (6) Count Six for unjust enrichment.  *See, generally*, Complaint.

In support of its motion, Defendant contends that Plaintiff has failed to state a claim upon which relief can be granted.  Defendant also argues that Plaintiff has failed to plead fraud with

---

[2] Plaintiff's complaint also contains allegations related to the alleged class of consumers that Plaintiff seeks to represent, *see id.* at ¶¶ 132-140,  which are not relevant to Defendant's pending motion, for partial dismissal of Plaintiff's complaint, *see* Dkt. No. 7.

sufficient particularity.  Finally, Defendant claims that the Court lacks subject matter jurisdiction

in certain respects.  *See, generally*, Dkt. No. 7.[3]


## II. DISCUSSION

**A.      Legal standards**

### 1. Lack of subject matter jurisdiction

Defendant seeks dismissal for lack of subject matter jurisdiction pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure.  "A district court properly dismisses an action

under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the

statutory or constitutional power to adjudicate it[.]'"  *Cortlandt St. Recovery Corp. v. Hellas

Telecomms.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d

110, 113 (2d Cir. 2000)).  A court addressing such a motion "may refer to evidence outside the

pleadings," and the plaintiff "has the burden of providing by a preponderance of the evidence"

that subject matter jurisdiction "exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

2000) (citations omitted).

---

[3] At the time that Plaintiff filed her memorandum of law in opposition to Defendant's motion, this
Court's Local Rule 7.1(b)(1) provided that "[n]o party shall file or serve a memorandum of law
that exceeds twenty-five (25) pages in length, double-spaced, unless that party obtains leave of
the judge hearing the motion prior to filing."  Local Rule 7.1(b)(1).  Local Rule 10.1 also
provided that "all text, whether in the body of the document or in footnotes, must be a minimum
of 12-point type," "all documents must have one-inch margins on all four sides of the page," and
"all text in the body of the document must be double-spaced."  Local Rule 10.1(a)(1)-(3).  The
memorandum of law that Plaintiff filed was twenty-five pages long, but it did not comply with
the rules on spacing and margins.  Defendant suggests that the Court should order Plaintiff to
show cause why her memorandum of law should not be stricken as oversized and in violation of
the rules.  In order to prevent needless delay, the Court will treat Plaintiff's memorandum of law
as if it had been accompanied by a motion for leave to exceed page limits and grant that motion.
The Court notes, however, that attempts to circumvent page limits and local rules by
manipulating spacing and margins does nothing to enhance the credibility or professional
reputations of attorneys who engage in such practices.

### 2. *Failure to state a claim*

Defendant argues that Plaintiff has not stated a claim upon which the Court could grant relief even if the Court accepts all the factual allegations in the complaint as true.   In addressing such motions, the Court must accept "'all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor.'"  *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009 (quotation omitted).  This tenet does not apply to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 3. *Fraud*

Rule 9(b) of the Federal Rules of Civil Procedure "provides: 'In all averments of fraud or mistakes, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.'" *O'Brien v. Natl. Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (quoting Fed. R. Civ. P. 9(b)).  The purpose of the particularity requirement is to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit."  *Id.* (citing *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990)) (other citations omitted).  "[T]o comply with Rule 9(b), 'the complaint must: (1) specify the statements the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent.'"  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)

(quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  Although a

plaintiff may plead a "mental state . . . 'generally,'" a plaintiff "must nonetheless allege facts 'that

give rise to a strong inference of fraudulent intent.'"  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells

Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d

273, 290-291 (2d Cir. 2006)).


**B.**     **New York General Business Law claims[4]**

Defendant argues that the Court must dismiss Plaintiff's claims related to false labeling

under New York law because no reasonable consumer would be misled by the labeling claims in

question.  *See* Dkt. No. 7-1, Defendant's Memorandum of Law, at 8.  Defendant asserts that each

---

[4] Plaintiff originally brought claims in the United States District Court for the Northern District of California.  *See LeGrand v. Abbott Labs.*, 655 F. Supp. 3d 871 (N.D. Cal. 2023).  Defendant argues that, in that case, the court lacked personal jurisdiction over it for the claims Plaintiff brought because she was a New York resident who alleged injury under New York law from events that occurred in New York, not in California.  *See id.* at 883.  After considering the issue in light of Plaintiff's role as part of a proposed class action, the district court concluded that Plaintiff "has not made a showing of personal jurisdiction over Abbott as to [her] claims."  *Id.* at 884.  The court also found that pendant personal jurisdiction did not apply to Plaitniff's claims.  *See id.* at 885.  The court also found that, "[b]ecause the Court . . . lacks personal jurisdiction, the Court declines to address Abbott's other arguments for dismissal of Bates' claims."  *Id.*  The court permitted Plaintiff to replead to raise any federal question claims.

Plaintiff's briefing contends that New York's standard "is identical to that applied under the California consumer protection statutes evaluated in the related *LeGrand* case, under which materially identical allegations were sufficient to state a claim for consumer deception."  *See* Dkt. No. 24, Plaintiff's Memorandum of Law, at 13 (citations omitted).  Plaintiff cites to the decision from the California district court to argue that Defendant's advertising violates the analogous New York laws.  Although such argument might play some role in persuading the Court, the Court does not find that a decision analyzing a different state's statutes has any power to bind this Court in analyzing New York law.  As the Judge in *Legrand* explained, "the Court finds it does not have personal jurisdiction over Bates' claims, and thus does not further address the causes of action brought under New York law."  *Legrand*, 655 F. Supp. 3d at 885.

of the products in question disclosed the amount of sugar in the product, and courts have frequently rejected any claim by a plaintiff that labeling a product as "healthy" that also contains added sugar is misleading. *See id.* Moreover, the labels inform consumers of the sugar content of the product, labeling an ordinary consumer can surely understand. *See id.*

New York's General Business Law § 349(a) "prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]'" *Ramirez v. Donado Law Firm, P.C.*, 169 A.D.3d 940, 942 (2d Dep't 2019) (quoting N.Y. Gen Bus. L. § 349(a)). "A private action to recover damages" under the statutes "'must be predicated on a deceptive act or practice that is 'consumer orient.'" *Harmon v. Major Chrysler Jeep Dodge, Inc.*, 101 A.D.3d 679, 682 (2d Dep't 2012) (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (N.Y. 1999) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d at 25)) (other citation omitted). A plaintiff must also make "a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) (citations omitted). "[A] 'deceptive act or practice'" is "a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999) (quoting *Karlin v. IVF Am.*, 93 N.Y.2d 282, 294 [(1999)] (parenthetical omitted)). "To recover damages . . . a plaintiff need not prove intent to defraud or justifiable reliance," but "the plaintiff 'must prove actual injury, though not necessarily pecuniary harm.'" *Amalfitano v. NBTY, Inc.*, 128 A.D.3d 743, 745-46 (2d Dep't 2015) (quoting *Smith v. Chase Manhattan Bank, USA*, 293 A.D.2d 598, 599 [2002]) (other citations omitted)).

The Court finds that, as described above, Plaintiff has alleged that Defendant produced a consumer-oriented product and that she suffered an injury as a result of what she contends is materially misleading labeling.  The question here is, therefore, whether the labeling on the Ensure drinks was materially misleading.  "'[T]here can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed[.]'"  *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (quoting *Broader v. MBNA Corp.*, 281 A.D.2d 369, 722 N.Y.S.2d 524, 526 (1st Dep't 2001)).  "While it is true that literally accurate statements can still be misleading, this Court has repeatedly observed that 'in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial.'"  *Id.* (quoting *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019)).  Courts "consider the challenged advertisement as a whole, including disclaimers and qualifying language."  *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (citing *Fink*, 714 F.3d at 742 ("[U]nder certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception."); *Freeman*, 68 F.3d at 289-90).

### 1. General claims about misleading labeling

Defendant argues that Plaintiff has not alleged a claim under General Business Law § 349 or § 350.[5]  Defendant then points to why particular statements are not misleading.  The Court will first address the general claim and then address particular statements.

Plaintiff alleges that Defendant "has marketed the Ensure Nutrition Drinks with labeling representations intended to appeal to consumers interested in health and wellness and intended to

---

[5] "[C]ourts have noted that the standards under both [section 349 and 350] are substantively identical."  *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007) (citation omitted).

convince those consumers that the Products are both generally healthy, meaning that they are the type of beverages that benefit health rather than detriment it, and that they provide specific types of health benefits or bodily support."  *See* Complaint at ¶ 78.  These representations, Plaintiff claims, are contrary to "the scientific evidence."  *See id.* at ¶ 79.  Marketing the products as providing "'complete' and 'balanced' nutrition when between 16.4% and 40% of their calories come from added sugar," Plaintiff claims, is false or highly misleading because various governmental bodies recommend that Americans limit their "added sugar consumption to less than 5% or 10% of daily calories."  *See id.* at ¶ 80.  Moreover, Plaintiff alleges that, "by calling the Products 'nutrition' drinks, labeling them with additional health and wellness messages . . . and touting them as 'Doctor Recommended,'"  Defendant "conveys that the Products are healthy, meaning at least that they will not detriment health."  *See id.* at ¶ 81.  Defendant makes these claims, Plaintiff alleges, even though "scientific evidence convincingly shows that consuming sugar-sweetened beverages . . . causes serious, negative health consequences."  *See id.*  Those claims are also "deceptive, even if some nutrients in the Ensure Nutrition Drinks are capable of providing some potential health benefit, because regular consumption of the Products is likely to have an overall, net detrimental impact on health for most consumers."  *See id.*  Similarly, claims that the drinks benefit heart health and digestion are false and misleading, because drinking beverages with added sugar "is associated with increased risk of cardiovascular disease and mortality, . . . [and] hurts gut microbiota and the gut barrier[.]"[6]  *See id.* at ¶ 82.

---

[6] Plaintiff also alleges that facts belie Defendant's claim that the drinks aid immunity.  *See* Complaint at ¶ 82.  In explaining how scientific facts undermine that claim, however, Plaintiff states only that, "because scientific evidence shows that the consumption of added sugars can [sic], Abbott's representations that its Ensure Complete Nutrition Shakes and Ensure Advanced Nutrition Shakes and Ensure Advanced Nutrition Shakes provide 'Immunity' or 'Immune' support, are false, or at least highly misleading."  *See id.*  Plaintiff does not allege how scientific studies "can" show that the claims about immunity are false or highly misleading.  That missing

Plaintiff contends these claims about the health effects of the drinks "have the capacity, tendency, and likelihood to confuse or confound Plaintiff and other average consumers acting reasonably." *See id.* at ¶ 83. An ordinary consumer, Plaintiff claims, would not be "intimately familiar with the scientific evidence regarding the health effects of consuming added sugar." *See id.* Such a consumer would not know that consuming drinks with added sugar, like those that Defendant produces, would have a "[detrimental [effect]" on "overall health" and causes specific harm to "digestive and heart health." *See id.* That lack of scientific knowledge would also permit an ordinary consumer to "believe that the Products provide the represented benefits notwithstanding their added sugar content[.]" *See id.* at ¶ 84. Without reviewing the relevant scientific evidence, the label would not make clear to the ordinary consumer, Plaintiff contends, that the added sugar is contrary to a consumer's health. *See id.* The label also does not inform the ordinary consumer if the product provides the benefits claimed. *See id.* at ¶ 85.

Plaintiff claims that she purchased the products because she "was seeking a healthy beverage." *See id.* at ¶ 117. She read the representations on the labels that "she was purchasing a 'Complete' 'nutrition shake' that was a 'Complete, Balanced Meal Replacement,' 'Doctor Recommended,' and supportive of 'Immune,' 'Heart,' and 'Digestive' health." *See id.* "Plaintiff believed," based on these claims, "that consuming Ensure Complete Nutrition Shakes would provide her with complete, balanced nutrition and would be beneficial rather than detrimental to her health when consumed regularly." *See id.* Plaintiff lacked any specialized knowledge that would allow her to understand "the likely health effects of consuming Ensure Nutrition Drinks given their added sugar content." *See id.* at ¶ 118. She would not have purchased the drinks "if

---

claim may be a proofreading error, but the Court cannot consider a claim that Plaintiff does not actually make.

she knew that the challenged labeling claims were false and misleading in that the Ensure Nutrition Drinks are not complete, balanced, nutrition, do not provide the specific health benefits promised, and are detrimental rather than beneficial to health." *See id.* at ¶ 120.

At their core, Plaintiff's allegations that the labeling is materially misleading are based on the idea that Defendant markets Ensure drinks as healthy and nutritious and that they provide certain health benefits but that these claims are false because the products contain added sugar. A great deal of research, Plaintiff claims, indicates that added sugar is detrimental to consumers' health. Anticipating this claim, Defendant argues that the products' labels provide consumers with information on the actual sugar content of the beverages. *See* Dkt. No. 7-1 at 8. A consumer concerned about the sugar content of the drink would only have to look at the nutrition label to determine whether the product contained more sugar than the consumer thought healthy. *See id.*

The parties disagree about whether information on Ensure's labels that indicate the amount of sugar contained in each drink undermines any claim that statements about whether the drink provides some sort of complete, nutritious, and healthy beverage. Defendant argues that consumers who are concerned about the amount of sugar in the drink can read the label to find out that information. *See id.* Plaintiff contends that the mere fact that ingredients and amounts are listed in the label does not mean that Defendant's claims are not misleading when read in context. *See id.* A listing of sugar content does not permit an ordinary consumer to understand that excess sugar in the drink undermines any health benefits claimed for the drink. *See id.* at 15. "'[R]easonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.'" *See id.* (quoting *Mantikas [v. Kellogg Co.]*, 910 F.3d [633,] 637 [(2d Cir. 2018)] (quoting

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)) (other citation omitted). "'Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging.'" *Mantikas*, 910 F.3d at 637 (quoting [*Williams*, 552 F.3d] at 939-40). As such, "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Id.* "In the Second Circuit, it is considered 'materially misleading to suggest a product contains a greater proportion of a preferred ingredient than it actually does, even where there is a visible ingredients list that states the correct composition of the food.'" *Hoffmann v. Kashi Sales, L.L.C.*, 646 F. Supp. 3d 550, 558 (S.D.N.Y. 2022) (quoting *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) (citing *Mantikas v. Kellogg Co.*, 910 F.3d 633, 639 (2d Cir. 2018)); *Mantikas v. Kellogg Co.*, 910 F.3d at 637 ("a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box"))).

The Court finds that the statements in question – which address the health effects of the Ensure drinks and which Plaintiff alleges give the false impression that the products are healthy and provide complete nutrition – are not materially misleading in the sense required to raise a plausible claim under New York law. Plaintiff alleges that added sugars are fundamentally unhealthy and contrary to complete nutrition, Here, however, the statements on the bottles are not false statements about the ingredients in the drinks that are corrected if the consumer takes the time to read the ingredient list. Plaintiff does not allege that Ensure's labeling asserts that Ensure contains healthful ingredients that the drinks actually lack. Instead, Plaintiff argues that, because the drinks contain added sugar, Defendant makes materially misleading statements about

the health benefits of the products. Plaintiff's argument could be read to be that no drink with added sugar has any of the health benefits that Defendant claims and, therefore, stating the sugar content on the labels does nothing to correct any misunderstanding a consumer may have.[7] Here, however, Defendant's products do not make any claims about sugar content and, thus, do not offer any misleading information about the amount of sugar that the products contain. Plaintiff's claim is effectively that any sugar added to the products renders them unhealthy and any labeling that discusses health effects from the products is false. Despite the studies Plaintiff cites in her complaint, the Court finds that Plaintiff's position about the health effects of added sugar is an opinion about the merits of the product. A consumer who agrees that any added sugar in a nutrition drink undermines its health benefits can obtain that information from the label.

---

[7] In contrasting this case with *Melendez v. One Brands, LLC*, No. 18-CV-06650 (CBA) (SJB), 2020 U.S. District LEXIS 49094 (E.D.N.Y. Mar. 16, 2020), Plaintiff argues that "nowhere on the Ensure Nutrition Drinks' packaging does Abbott expressly state they are in fact *un*healthy in contradiction of its health and wellness representations and Abbott admits that 'no other statements on the label make any representations about sugar whatsoever.'" *See* Dkt. No. 24, Plaintiff's Memorandum of Law, at 18. In *Melendez*, the defendant produced "ONE" nutrition bars that had on their label claims that the bars contained 1g sugar and 20g protein. *See id.* at *2. Testing showed that the bars contained considerably more sugar than one gram. *See id.* at *2-*3. The plaintiff alleged that the claims were misleading because the labeling claim of one gram of sugar caused consumers "reasonably [to] believe that the [bars] are lower in calories and carbohydrates than they are." *Id.* at *3. The court in *Melendez* concluded that such labeling was not materially misleading because "any potential ambiguity created by the front label regarding the bars' carbohydrate and caloric contents is readily clarified by the back panel of the bars' packaging, which lists the amount of carbohydrates and calories in each bar." *Id.* at *19.

In this case, Plaintiff's allegation is that the drinks do not meet the health benefits claimed on the labeling because they contain too much added sugar. Plaintiff does not allege the labeling claims that the drinks are low in added sugar. A consumer who agrees with Plaintiff's perspective that such added sugar vitiates any other health benefits the drinks may contain can look at the labels and determine how much sugar the drinks contain. As in *Melendez*, any misconception about the contents of the Ensure drinks based on claims about positive benefits can be resolved by a consumer who looks at the sugar content on the labels.

Thus, the Court finds that the complained-of statements on the label are not materially misleading.

### 2. Particular statements

Defendant points to several particular statements on the labels that Plaintiff alleges violated New York law, which Defendant does not claim are preempted by federal law. Instead, Defendant claims that such statements do not give rise to any cause of action either because the statements are true or because the statements are too vague to support a claim. The Court will address each of these statements in turn.

### (i). "#1 Doctor Recommended Brand"

Defendant argues that this statement, which is contained on labels for Ensure drinks, is a statement that can definitely be proved true or false. *See* Dkt. No. 7-1 at 16. Nowhere in Plaintiff's complaint does she allege that the statement is false. As such, Defendant insists, Plaintiff has not alleged that there is anything false or misleading about the statement, and the Court should dismiss any claims based on that statement. *See id.* Plaintiff argues that this statement, when taken in the context of Defendant's efforts to appeal to consumers who seek out and are willing to pay more for healthy foods and Defendants' omission of information regarding the harmful effects of added sugar, is clearly misleading. *See* Dkt. No. 24 at 20.

The Court agrees with Defendant in this respect. Plaintiff does not allege that the statement is false and because in a general sense the Court has found that claims about the health effects of the drinks are not materially misleading despite the presence of added sugar in the products, the Court finds that this statement is not misleading.

### (ii) "With nutrients for immune system support"

Defendant contends that this statement is also factually true.  Defendant contends that the labels on the products show that the products contain Zinc, Protein, and Vitamins A and D, nutrients that support the immune system.  *See* Dkt. No. 7-1 at 17. Plaintiff does not allege that the products do not contain those nutrients, and the allegation that the drinks contain more sugar than studies say is healthy for consumers does not undermine this fact.  *See id.*  Plaintiff argues that, when seen in the context of claims that the products are healthy when there is no acknowledgement of the dangers of added sugar, such claims are materially misleading.  *See* Dkt. No. 24 at 21.

The Court agrees with Defendant in this respect.  Plaintiff's complaint is that the products are not as healthy as claimed because they contain added sugar.  The products' labels indicate that they contain added sugar.  The labels also indicate that the products contain nutrients which support the immune system.  Since the Court has found that the labels are not materially misleading when viewed in their context, the Court also finds that this particular claim is not materially misleading.

### (iii) "Discover More at Ensure.com"; "Learn About Ensure Complete Nutrition and Benefits"; and "Chat Live with a Registered Dietician About Nutrition"

Defendants contend that these statements do not describe the product at all.  Instead they simply direct consumers to seek out sources to learn more about the products.  They are not false and misleading.  *See* Dkt. No. 7-1 at 18.  Plaintiff again argues that, when taken in context, the

statements contribute to the misleading claim that the products, despite their added sugar content, are healthy.  *See* Dkt. No. 24 at 22.

The Court agrees with Defendant.  Directing a consumer to more sources of information about a product does not represent any claim about the benefits of that product.  Plaintiff does not allege that the statements do not direct a consumer to sources of information.  Even when read in context, the claims do not represent a materially misleading statement about the health benefits of the products.

### *(iv.) "Complete" or "Advanced"*

Defendant next contends that the words "complete" and "advanced" when used to describe the products in question merely amount to "puffery," which cannot be subject of a false labeling claim in New York.  *See* Dkt. No. 7-1 at 18-20.  Plaintiff argues that these statements, read in context, indicate that the drinks are healthy even though they contain added sugar content.  *See* Dkt. No. 24 at 22-25.

"Statements that are mere puffery cannot support a claim under GBL §§ 349 or 350 and thus '[c]ourts can determine that a statement is puffery as a matter of law.'"  *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346-47 (S.D.N.Y. 2020) (quoting *Lugones [v. Pete & Gerry's Organic, LLC,]* 440 F. Supp. 3d at 241 (citation omitted)).  "'Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language.'"  *Id.* at 347 (quoting *Kacocha [v. Nestle Purina Petcare Co.*, No. 15 Civ. 5489 (KMK), 2016 U.S. Dist. LEXIS 107097,] 2016 WL 4367791, at *16 [(S.D.N.Y. Aug. 12, 2016)] (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993))) (other citation omitted).  Such "exaggerated statements 'make no specific claims on which consumers could rely.'"  *Id.* (quoting *Pelman v. McDonald's*

*Corp.*, 237 F. Supp. 2d 512, 528 n.14 (S.D.N.Y. 2003)).  Puffery is "'[s]ubjective claims about products which cannot be proven either true or false.'"  *Id.* (quoting *Time Warner Cable[, Inc. v. DIRECTV, Inc.*,] 497 F.3d [144,] 159 [(2d Cir. 2007)] (alteration in original) (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995)).

The Court agrees with Defendant that statements that the drinks represent "complete" and "advanced" nutrition are puffery that cannot be actionable under the relevant statutes.  Those statements are not simple statements of fact which can be shown to be true or false but, instead, represent claims about the relative value of the product which are broad and commendatory; "complete" or "advanced" is a statement of value more than a statement of fact, and parties can debate what would constitute "complete" or "advanced" nutrition in any product.  The statements represent "'a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion.'"  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007) (quoting [*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000)) (other citation omitted).  Plaintiff cannot sustain a claim based on these statements.

### (v.) "Most advanced nutritional product"; "designed to help rebuild your strength and energy from the inside, with an All-in-One blend to support your health"; and "[r]ecommend[s] 2 bottles per day as part of a healthy diet"

Defendant contends that statements claiming that Ensure drinks are the "most advanced nutritional product," "designed to help rebuild your strength and energy from the inside, with an all-in-one blend to support your health," and "recommend[s] 2 bottles per day as part of a healthy diet" are likewise puffery that cannot serve as the basis for a claim.

The Court agrees with Defendant for the reasons stated above with reference to "advanced" and "complete" nutrition.  The statements represent general claims of superiority of the products and do not represent the sort of measurable product claim that could support a cause of action under the relevant statutes.

In the end the Court finds that the labels on the Ensure products are not materially misleading and that Plaintiff has failed to state a claim in this regard.  Therefore, the Court grants Defendant's motion to dismiss with regard to Plaintiff's New York General Business Law §§ 349 and 350 claims.

## C.      Preemption

Defendant argues that federal law preempts Plaintiff's New York claims to the extent that they depend on representations about nutrition content.  *See* Dkt. No. 7-1 at 20.  According to Defendant, federal law expressly preempts states from establishing requirements about nutrition labeling on food products and that statements that a product is part of a healthy diet are implicated in this preemption.[8]  *See id.*

---

[8] Defendant lists the statements on the labels to which, it argues, preemption applies:

> On the Ensure Complete Nutrition Shake:
>> "Complete"
>> "Complete, Balanced Meal Replacement"
>> "Immune"
>> "Digestion"
>> "Heart"
>
> On the Ensure Enlive Advanced Nutrition Shake:
>> "All in One . . . Heart[,] Immune[, and] Digestion"
>> "Recommend[s] 2 bottles per day as part of a healthy diet"

"Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are 'without effect.'" *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010) (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981))) (other citation omitted).  Three general types of preemption exist: "(1) express preemption, where Congress has expressly preempted local law; (2) field preemption, 'where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law'; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *Id.* at 104 (quoting *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005)) (other citation omitted).  "The key to the preemption inquiry is the intent of Congress." *Id.* (citations omitted).  Congress can express "an intent to preempt state or local law explicitly, through the express language of a federal statute, or implicitly, through the scope, structure, and purpose of the federal law." *Id.* (citing *Altria Group*, 129 S. Ct. at 543).  Courts usually find field and conflict preemption "based on implied manifestations of congressional intent." *Id.* (citation omitted).  "Even where a federal law

---

On the Ensure Compact Therapeutic Nutrition Shake:
    "Complete Balanced Nutrition"
    "therapeutic nutrition shake"

On the Ensure Clear Nutrition Drink:
    "nutrition drink"

On the Ensure Original Nutrition Powder:
    "nutrition powder"

*See* Dkt. No. 7-3 at 3.

contains an express preemption clause, the court still may be required to consider implied

preemption as it considers 'the question of the substance and scope of Congress' displacement of

state law.'"  *Id.* (quoting *Altria Group*, 129 S. Ct. at 543).  "Where . . . preemption is considered

on a motion to dismiss, '[a] district court may find a claim preempted only if the facts alleged in

the complaint do not plausibly give rise to a claim that is not preempted.'"  *Booker v. E.T. Browne*

*Drug Co.*, No. 20-CV-03166 (PMH), 2021 U.S. Dist. LEXIS 182301, *8 (S.D.N.Y. Sept. 23,

2021) (quoting *Reid v. GMC Skin Care USA Inc.*, No. 15-CV-00277, 2015 U.S. Dist. LEXIS

14001, 2016 WL 403497, at *8 (N.D.N.Y. Jan. 15, 2016) (quoting *Galper v. JP Morgan Chase*

*Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015))).

Defendant argues that the Federal Food, Drug, and Cosmetic Act ("FDCA") expressly

preempts states from regulating "nutrient content statements," and that "[m]any of the challenged

statements" are such statements.[9]  Defendant does not contend that statements that use the term

"health" are nutrient content statements and preempted.  Defendant contends that the statements

in question "are made in connection with representations about the nutrient content of the

product, which are expressly permitted by federal law" and Sections 343-1(a)(5) and 343®(1) of

the FDCA preempt any state regulations of such claims.  *See* 21 U.S.C. §§ 343-1(a)(5) and

§ 343(r)(1).

---

[9] "The FDCA, enacted in 1938, prohibits the misbranding of food and gives the FDA the
authority to oversee the safety and labeling of food.  *See* 21 U.S.C. § 331(a).  In 1990 Congress
amended the FDCA by enacting the Nutrition Labeling and Education Act of 1990 (the
"NLEA"), in order 'to clarify and to strengthen the [FDA's] legal authority to require nutrition
labeling on foods, and to establish the circumstances under which claims may be made about
nutrients in foods.'"  H.R. Rep. No. 101-538, at 7 (1990), *as reprinted* in 1990 U.S.C.C.A.N.
3336, 3337.  The NLEA preempts state laws that impose labeling requirements that are 'not
identical' to the requirements of the FDCA.  21 U.S.C. § 343-1(a)(2)."  *Axon v. Citrus World,*
*Inc.*, 354 F. Supp. 3d 170, 179 (E.D.N.Y. 2018)

Under federal law,

> [a]n 'implied nutrient content' claim is a statement that:
>
> (i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or
>
> (ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams (g) of fat").

*Clemmons v. Upfield US, Inc.*, No. 22-cv-355 (PKC), 2023 U.S. Dist. LEXIS 57135, *8 (S.D.N.Y. Mar. 31, 2023) (quoting [21 C.F.R.] § 101.13(b)(2)).

The federal regulations explain "how implied nutrient claims may appear on product labeling." *Id.* (citing [21 C.F.R.] § 101.65).  "For example, the statement 'contains oat bran' on a product label is an implied nutrient content claim regarding the amount of dietary fiber in the product because oat bran 'is known to contain' fiber."  *Id.* (quoting [21 C.F.R.] § 101.65(c)(3)).  Still, under the regulations, "absent some added meaning gleaned from context-'certain label statements about the nature of a product are not nutrient content claims' at all and are exempt from the relevant regulatory requirements."  *Id.* at *8-*9 (quoting [21 C.F.R.] § 101.65(b)).  Such statements "include[e] 'claim[s] about the presence of an ingredient that is perceived to add value to the product, e.g., 'made with real butter,' 'made with whole fruit,' or 'contains honey.'"  *Id.* at *9 (quoting[ 21 C.F.R.] § 101.65(b)(3)).  Such a "'valued ingredient' statement . . . is not a nutrient content claim, implied or otherwise."  *Id.*

The FDCA contains an express preemption provision, and "state laws respecting nutrient content claims – the type of claim described in section 343(r)(1) – are preempted if they impose different labeling requirements from those in the" regulations.  *Id.* at *9-*10 (citing 21 U.S.C. § 343-1(a)(5)).  Still, "'claims based on statements not falling into those categories are not

preempted.'" *Id.* at *10 (quoting *Ackerman v. Coca-Cola Co.*, 09 Civ. 395 (JG), 2010 U.S. Dist.

LEXIS 73156, 2010 WL 2925955, at *7 (E.D.N.Y. July 21, 2010)).  Since such preemption "'is

an affirmative defense,'" that defense "must be established by the party claiming it." *Jackson-*

*Mau v. Walgreen Co.*, 652 F. Supp. 3d 349, 355 (E.D.N.Y. 2023) (quoting *Durnford v.*

*MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018)).  Moreover, "[t]he 'FDCA's stated

purpose of promoting public policy by retaining parallel avenues for private and public

enforcement actions against false or misleading statements,' suggests that its preemptive power

should be construed narrowly." *Id.* at 356 (quoting *Kroessler v. CVS Health Corp.*, 977 F.3d 803,

814 (9th Cir. 2020)).  "The presumption against preemption has been recognized in matters of

public health and safety, including the regulation of food and drugs" and "where Congress

provides an express preemption clause, the presumption against preemption requires courts to

read the clause narrowly." *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S.

Dist. LEXIS 73156, *20-*21 (E.D.N.Y. July 21, 2010) (citations omitted).  A plaintiff "may

avoid the statute's preemptive force: '(1) if the plaintiff['s] claims seek to impose requirements

that are identical to those imposed by the FDCA; or (2) if the requirements plaintiff[] seek[s] to

impose are not with respect to claims of the sort described in [the statute].'" *Niles v. Arizona*

*Beverages USA LLC*, No. CV 19-1902 (GRB) (ARL), 2021 U.S. Dist. LEXIS 135064, *21

(E.D.N.Y. July 19, 2021) (quoting *Ackerman*, 2010 U.S. Dist. LEXIS 73156, 2010 WL 2925955,

at *6).

   Defendant, which bears the burden to show preemption, points to statements contained on

the labels of each of several drinks and argues that preemption applies to them.  As a court

addressing a claim that also alleges false advertising because claims that Ensure drinks were

healthy ignored the fact that they contained added sugar, stated, "[t]he Food and Drug

Administration ("FDA") has declined . . . to prohibit food labeling which advertises a product as 'healthy' when it contains high amounts of sugar." *LeGrand v. Abbott Labs*, 655 F. Supp. 3d 871, 887 (N.D. Cal. 2023) (citing *Hadley [v. Kellogg Sales Co.]*, 273 F. Supp. 3d [1052,] 1073 [(N.D. Ca. 2017)]*, Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *8 (E.D.N.Y. July 21, 2010)).  The Court agrees with these courts and likewise finds that the "state law claims will be preempted to the extent" they allege "that nutrient content claims on Ensure labels are misleading because they indicate the products are healthy despite containing high levels of sugar." *Id.* (citation omitted)

Still, Defendant points to other statements which Defendant insists are preempted because they are implied nutrient claims.  The regulations define two types of such claims.  First, "[a]n express nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'"  21 C.F.R. § 101.13(b)(1). Second, "[a]n implied nutrient content claim is any claim that: (i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or (ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat.'"  21 C.F.R. § 101.13(b)(2).  "'[I]n determining whether an implied nutrient claim has been made, the court must consider the context of where the challenged claim is made, while the 'magic words' that might create an implied nutrient claim do not need to be directly adjacent to the discussion of a nutrient to create an implied content claim, there must be a connection given the words, their placement, and their context.'"  *LeGrand*, 655 F. Supp. 3d at 888 (quoting *Krommenhock v. Post*

*Foods, LLC*, 334 F.R.D. 552, 571 (N.D. Cal. 2020)).  Both parties argue the implied nutrient claims under this standard.

The Court will address each implied claim in turn.

The Ensure Complete Nutrition Shake label includes the following terms:
> "Complete"
> "Complete, Balanced Meal Replacement"
> "Immune"
> "Digestion"
> "Heart"

The Court finds that preemption applies to all of these terms.  The terms "Immune," "Heart" and "Digestion" are all located on the label directly next to discussions of ingredients and their contents.  The word "Heart" is next to a claim that the product contains "Plant-Based Omega-3 ALA."  This labeling "suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement above a nutrient (e.g., "healthy, contains 3 grams (g) of fat.'"  21 C.F.R. § 101.13(b)(2).  The terms "Immune" and "Heart" contain similar explicit statements about nutrient contents.  The term "Complete, Balanced Meal Replacement" does not tie itself to any particular nutrient in exactly the same way but the context of the packaging makes clear that "complete" refers to the other benefits, which are tied to particular nutrients and amounts, contained in the same grid.  The term "Complete" is less directly connected to the claims about nutrients and their amounts in the product.  The term "Complete," however, is placed directly above the grid that contains the specific health information and the Court finds that term necessarily connected to the other nutrient claims.  Those claims, as explained, are in specific amounts.  The Court must, therefore, conclude that "Complete," from the context of where the

labeling is placed and the other parts of the labeling to which that term is connected, is an implied nutrient claim.  The Court, therefore, finds that all of the claims that Defendant cited are implied nutrient claims and preempted.

On the Ensure Enlive Advanced Nutrition Shake, Defendant seeks preemption for the following terms:

> "Advanced Nutrition Shake"
> "All in One . . . Heart[,] Immune[, and] Digestion"

Defendant seeks to preempt these statements as implied nutrient claims.  The chart referenced in the footnote on this label states that the preempted phrase is "Recommends 2 bottles a day as part of a healthy diet."  Similar to the Ensure Complete product, the Court finds that the statements concerning the "all in one" nature of the product are placed in a way that connects them directly to the explicit claims about nutrients, and those claims are preempted.  As to the other phrases, the image provided to the Court does not contain the phrases that Defendant cited.  The Court, therefore, cannot find that those claims are implied nutrient claims subject to preemption.  Of course, if they are not on the bottle, they also cannot be false advertising claims.

On the Ensure Compact Therapeutic Nutrition Shake label are the following terms: "Complete, balanced nutrition" and "Therapeutic nutrition shake."  The Court finds that there is an implied connection between "therapeutic nutrition shake" and the explicit statements about the nutrient contents.  The words are directly above explicit listings of such nutrients, and they clearly imply that the reason that the nutrition shake is "therapeutic" is because of those listed nutrients.  Nowhere in the image of this product's label provided to the Court, however, do the words "Complete, Balanced Nutrition" appear.  The Court cannot evaluate whether an implied

content claim exists without such information.  As Defendant has the burden to show preemption, the Court finds that this phrase is not subject to preemption.

On the label of the Ensure Clear Nutrition Drink is the term "Nutrition Drink." Defendant contends that the phrase is connected directly to the information that the drink is "fat free" and contains certain amounts of protein and calories.  The Court agrees that the phrase "nutrition drink" represents an implied nutrient claim.  As displayed on the bottle, the context implies that the reason that the drink is a nutrition drink is that it contains the nutrients and calories listed directly below that phrase on the bottle.  Preemption applies to this claim as well.

On the label of the Ensure Original Nutrition Powder product, the phrase "nutrition powder" appears.  The Court also finds that the phrase "nutrition powder" is an implied nutrient claim and preempted under federal law.  The phrase is on the front of the can, directly above explicit statements about the nutrients and contents of the product that are clearly connected to the "nutrition powder" claim.  From this context, the Court concludes that the explicit information about nutrients explains the claim that the product is "nutrition powder."

**D.      Individual causes of action**

Defendant argues that Plaintiff has failed to state a claim upon which relief could be granted with regard to any of her individual claims.  The Court will address each of these claims in turn.

### 1. Intentional misrepresentation

Defendant argues that Plaintiff has failed to plead her intentional misrepresentation claims with the specificity that Rule 9(b) requires.  Defendant contends that Plaintiff's allegations with regard to fraud are vague and conclusory and fail to meet the specificity that the pleading standard requires.  *See* Dkt. No. 7-1 at 24.

"Generally, in a claim for fraudulent misrepresentation, a plaintiff must allege 'a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.'" *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178 (2011) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).  "'The elements of common-law fraud and intentional misrepresentation under New York law are the same.'" *Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474 (BKS/TWD), 2016 U.S. Dist. LEXIS 14000, *45 (N.D.N.Y. Jan. 12, 2016) (quoting *B&M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010) (citing *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998)).  Such claims "are subject to the heightened pleading requirements of Federal Rule 9(b)." *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 (JS) (AKT), 2015 U.S. Dist. LEXIS 63464, *28 (E.D.N.Y. May 14, 2015) (citing Fed. R. Civ. P. 9(b)).  "[T]o comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d

Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  The

Rule permits a plaintiff to plead "'[m]alice, intent, knowledge, and other condition of mind of a

person . . . generally.'"  *Id.* (quoting Fed. R. Civ. P. 9(b)).  Still, a plaintiff "'must allege facts that

give rise to a strong inference of fraudulent intent.'"  *Id.* (quoting *Acito v. IMCERA Group, Inc.*,

47 F.3d 47, 52 (2d Cir. 1995) (internal quotation marks and citation omitted)).  The plaintiff can

demonstrate this "'strong inference' . . . either (a) by alleging facts to show that defendants had

both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness.'"  *Id.* at 290-91 (quoting

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

    The parties disagree about whether Plaintiff has alleged fraudulent intent with sufficient

particularity.  In her intentional misrepresentation cause of action (Count Five), Plaintiff alleges

that Defendant "marketed the Ensure Nutrition Drinks in a manner conveying to reasonable

consumers that the Products promote general health and wellness, as well as providing specific

health benefits, like supporting immune, heart, and digestive health.  However, consuming sugar

sweetened beverages like the Ensure Nutrition Drinks harms, rather than supports the overall

health of the average consumer and harms rather than supports immune, heart, and digestive

health.  Therefore, [Defendant] has made misrepresentations about the Ensure Nutrition Drinks."

*See* Complaint at ¶ 170.  Plaintiff further alleges that these representations were "material" to

consumers considering purchasing the product, that Defendant "knew that the misrepresentations

were misleading, or has acted recklessly in making the representations, without regard to their

truth" and intended "that Plaintiff and other consumers rely on these misrepresentations, as

evidenced by the intentional and conspicuous placement of the misleading representations" on

the packaging. *See id.* at ¶¶ 171-173. Plaintiff alleges that she and other consumers "reasonably and justifiably relied" on the representations in purchasing the products. *See id.* at ¶ 174.

Defendant argues that Plaintiff's complaint fails to meet the heightened pleading standard of Rule 9(b). Defendant contends that Plaintiff "makes only vague allegations that the challenged statements were 'intended to appeal to consumers interested in health and wellness and intended to convince those consumers that the [p]roducts are . . . healthy,' and that '[Defendant] intends that [Bates] and other consumers rely on' those statements." *See* Dkt. No. 7-1 at 24. Such statements, Defendant claims, are "conclusory" and fall short of the pleading standard. *See id.* at 25. They fail, Defendant claims, to "support a strong inference of fraudulent intent." *See id.*

Plaintiff agrees that her allegations must be supported by facts that give a strong inference of fraudulent intent but argues that her complaint contains such allegations. *See* Dkt. No. 24 at 30. Plaintiff points out that her complaint alleges that "both governmental agencies and health professionals have noted the misleading nature of [Defendant's] advertising of the Ensure" products. *See* Complaint at ¶ 97. She also alleges that Defendant had agreed with the Federal Trade Commission not to make "any claim about the extent to which doctors or other professionals recommend any . . . nutritional supplement for healthy adults' and 'from misrepresenting that one serving of any Ensure product . . . as a meal replacement for healthy adults[.]" *See* Dkt. No. 24 at 30 (citing FTC Press Release). Plaintiff contends that her complaint further alleges that doctors and other experts have rejected the claims that Defendant makes about the products and that Defendant was aware of such claims. "Rather than correct the misconception created by its marketing" of the products, Plaintiff claims that Defendant

"continues to leverage consumer confusion to increase its profits at the expense of consumers' health." *See id.* at ¶ 102.

The question for the Court is whether Plaintiff has pled facts sufficient to make plausible a strong inference of fraudulent intent on the part of Defendant. The allegations in Plaintiff's complaint, related above, are that Defendant marketed the Ensure drinks as beneficial to purchasers' health even though Defendant knew that the products contained added sugar. Defendant allegedly knew of the presence of the added sugar. Plaintiff also alleges that the unhealthy nature of the added sugar in nutrition drinks was widely known. In her complaint, Plaintiff points to studies and government data that allegedly demonstrate the damage that added sugar can cause those who consume it.

Recently, in *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89 (2d Cir. 2023), the Second Circuit addressed whether a plaintiff had satisfied Rule 9(b) with respect to claims by a manufacturer that its products were "'therapeutic grade' and impart physical and/or mental health benefits" to consumers. *Id.* at 93. The court concluded that the plaintiff's complaint satisfied Rule 9(b). *See id.* at 100. The plaintiff alleged that the defendant "falsely labeled the Products 'therapeutic grade' and falsely promised that the Products confer health and medical benefits." *Id.* The plaintiff allegedly bought the products because of these promised benefits but found that they did not provide them. *See id.* "[I]n support of her claim that these were empty promises," plaintiff pointed "to conclusions reached by the N[ational] A[dvertising] D[ivision], the N[ational] A[dvertising] R[eview] B[oard], and three studies finding insufficient evidence for the conclusion that aromatherapy is an effective treatment for anxiety and other conditions." *Id.* Such allegations, the court concluded, constituted "fraud with sufficient particularity to satisfy Rule 9(b)[.]" *Id.*

Although this case is somewhat similar to *McNaughton*, the Court finds one crucial difference.  In *McNaughton*, the court found that the plaintiff had alleged fraud because she claimed that the products she purchased provided a specific therapeutic benefit when the defendant knew that the products did not provide that particular benefit.  In this case, Plaintiff alleges that Defendant sold a product as a healthy and nutritious product when Plaintiff was also aware that added sugar could have negative health consequences.  The labeling about which Plaintiff complains, however, did not explicitly allege anything about sugar and, as explained above, the labels accurately stated the amount of sugar added to the drinks.  The Court cannot find that Plaintiff has alleged fraud and fraudulent intent when Defendant's label admitted the existence and amount of the ingredient that provides the basis for the alleged fraud.  Consumers were not deceived about what they were buying.  Therefore, the Court grants Defendant's motion to dismiss Plaintiff's claim of intentional misrepresentation.

### 2. Negligent misrepresentation

Defendant argues that Plaintiff has failed to plead the special relationship required to support a negligent misrepresentation claim under New York law.  *See* Dkt. No. 7-1 at 25.  Merely alleging a buyer/seller relationship, Defendant insists, does not meet this requirement.  *See id.*

Plaintiff responds that the allegations in the complaint are sufficient to make plausible that a special relationship existed.  *See* Dkt. No. 24 at 32.  Plaintiff points out that the complaint alleges that Defendant's packaging invited consumers to visit a website to "Learn About Ensure's Complete Nutrition and Benefits" and "Chat Live with a Registered Dietitian About Nutrition."  Moreover, the products are "touted" as "advanced nutrition shake[s], "therapeutic nutrition

shake[s]," and the "most advanced nutritional product[s], designed to help rebuild your strength and energy from the inside, with an All-in-One blend to support your health." *See id.* (citations omitted). Plaintiff argues that packaging labeling the products as the "#1 Doctor Recommended Brand," serves to "[lend] credibility to the message that the Ensure Products are healthy, effective at providing the claimed benefits, and backed by scientific expertise." *See id.* Such labeling, Plaintiff claims, demonstrates both that Defendant has "unique expertise" that puts Defendant in a superior position to ordinary consumers who lack knowledge of the relevant scientific literature. *See id.*

In New York, "'[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)). Courts "have recognized that not all representations made by a seller of goods or provider of services will give rise to a duty to speak with care[.]" *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) (citation omitted). "Rather, liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Id.* In "commercial" cases like this one, "the absence of obligations arising from the speaker's professional status" means that liability requires a showing of "some source of a special duty of care." *Id.* "The existence of such a special relationship may give rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech." *Id.* In deciding whether such a special relationship exists, "a fact finder should

consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.*

In her complaint, Plaintiff alleges that the labeling on the "[m]ulti-packs" of Ensure Complete Nutrition Shakes "are sold in an outer cardboard box that further invites consumers to 'Discover More at Ensure.Com' in order to 'Learn About Ensure Complete's Nutrition and Benefits' and 'Chat Live with a Registered Dietician about Nutrition." *See* Complaint at ¶ 17.[10] Plaintiff alleges that she purchased "Ensure Complete Nutrition Shakes" during the relevant period. *See id.* at ¶ 116. By purchasing the Ensure Complete Nutrition Shakes, "Plaintiff was exposed to, read, and relied on Abbott's representations, including that she was purchasing a 'Complete' nutrition shake that was a 'Complete, Balanced Meal Replacement,' 'Doctor Recommended,' and supportive of 'Immune,' 'Heart,' and 'Digestive' Health." *See id.* at ¶ 117. Due to these claims and to the labels' representations taken "as a whole, Plaintiff reasonably believed that consuming Ensure Complete Nutrition Shakes would provide her with complete, balanced nutrition and would be beneficial rather than detrimental to her health when consumed regularly." *See id.* Plaintiff alleges that she is not a person with any expertise in nutrition or food science, but instead "a lay consumer who did not have the specialized knowledge that [Defendant] had about the scientific literature regarding the likely health effects of consuming" the products in question "given their added sugar content." *See id.* at ¶ 118.

---

[10] Plaintiff's complaint contains this allegation regarding a reference on packaging to consulting a website and contacting a dietitian only in reference to the Ensure Complete packaging.

Plaintiff's negligent representation claim alleges that Defendant "marketed the" products "in a manner conveying to reasonable consumers that the Products promote general health and wellness, and provide specific health benefits, like immune, heart, and digestive health." *See id.* at ¶ 161. A reasonable consumer exposed to these representations "would attach importance to such representations" "and would be induced to act thereon in making purchase decisions." *See id.* at ¶ 162. Plaintiff alleges that Defendant "owed a duty of care to Plaintiff, not to provide her false information when she was making her purchase decisions regarding the Ensure Nutrition Drinks." *See id.* at ¶ 164. Defendant either "knew or had been negligent in not knowing" that the products "did not promote health, but instead, consuming sugar sweetened beverages, like the Ensure Nutrition Drinks, harms rather than supports overall health of the average consumer and harms rather than supports immune, heart, and digestive health in particular." *See id.* at ¶ 165. Defendant had no "reasonable grounds for believing its misrepresentations were not false and misleading." *See id.* Furthermore, Plaintiff claims, Defendant "intends" that consumers like Plaintiff rely on the labeling "as evidenced by the intentional and conspicuous placement of the misleading representations on the" products' packaging. *See id.* at ¶ 166. Plaintiff and the other class members "reasonably and justifiably relied," therefore, on Defendant's "misrepresentations when purchasing the" products in question. *See id.* at ¶ 167. Had these consumers known "the correct facts," they would not have bought the products. *See id.*

As noted above, Plaintiff argues that her allegations are sufficient to make plausible her negligent representation claim. She contends that Defendant's packaging represented Ensure's manufacturer possessed a special expertise about health and nutrition that exceed her own and that Defendant was aware that potential purchasers would rely on this expertise.

Like many other courts that have addressed similar issues about claims on packaging, the Court finds that Plaintiff's allegations describe a typical buyer-seller relationship and not the sort of special relationship that would expose Defendant to liability for negligent misrepresentation. *See, e.g., Oldrey v. Nestle Waters N. Am., Inc.*, No. 21 CV 03885, 2022 WL 2971991, *5 (S.D.N.Y. July 27, 2022) (dismissing negligent misrepresentation claims involving allegations that water labels misstated the types and amounts of fruit ingredients because "[t]he Complaint's allegations here only describe a relationship between Plaintiff and Defendant which is that of an ordinary buyer and seller – which does not give rise to the kind of special relationship necessary to maintain a claim for negligent misrepresentation" (citation omitted)); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, *36 (S.D.N.Y. May 7, 2015) (dismissing negligent misrepresentation claims in a case involving allegedly false labeling that the products were organic because "Defendant's obligation to label products truthfully does not arise from any special relationship.  There is nothing approximating privity between the parties."); *Izquierdo v. Mondalez Int'l, Inc.*, No. 16-cv-4697 (CM), 2016 U.S. Dist. LEXIS 149795, *22 (S.D.N.Y. Oct. 26, 2016) (stating that "[n]othing in the complaint suggests that the transaction differs in any way from the numerous cases in this District and Circuit in which courts have held that a basic commercial transaction does not give rise to a special relationship").

In this case, Defendant made statements on the labels about the contents and benefits of the product, including claims about how the products would help provide for a balanced and healthy diet.  Defendant's packaging also noted that physicians recommended the brand, and at least some of the packaging offered purchasers an opportunity to obtain more facts about the benefits of the product by visiting a website and chat with a dietician about nutrition.  Although Plaintiff alleges that she relied on those claims in deciding to purchase the products, the Court is

not persuaded that such packaging served to create a special relationship. Plaintiff does not claim that she ever saw the references to the website or contacted any dietician for more information on the product. Plaintiff has not, therefore, alleged any contact with Defendant beyond that of an ordinary consumer and described an arm's length business transaction at the base of her negligent misrepresentation claim.

Although the Second Circuit "has held that a 'sparsely pled' special relationship of trust of confidence is not fatal to a claim for negligent misrepresentation where 'the complaint emphatically alleges the other two factors enunciated in *Kimmel*," the Court has concluded "where . . . a special relationship" is nowhere pled, and the allegations with respect to the other *Kimmel* factors are soft, a claim for negligent misrepresentation is dismissible under Rule 12(b)(6)." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 188 (2d Cir. 2004) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)). For these reasons, the Court finds that Plaintiff has failed to allege a plausible claim of negligent misrepresentation and, therefore, grants Defendant's motion to dismiss this claim.

### 3. Express warranty

Defendant argues that the Court must dismiss Plaintiff's express warranty claims because Section 2-313 of New York's Uniform Commercial Code requires that Plaintiff provide Defendant pre-suit notice of her claim. *See* Dkt. No. 7-1 at 30. Plaintiff does not oppose dismissal of this claim. *See* Dkt. No. 24 at 12 n.4 (stating that Plaintiff does not oppose dismissal of her "breach of express warranty claim").

The Court therefore grants Defendant's motion to dismiss Plaintiff's breach of express warranty claim.

### 4. Unjust enrichment claim

Defendant argues that the Court must dismiss Plaintiff's unjust enrichment claim because that claim is duplicative of Plaintiff's General Business Law claims.  *See* Dkt. No. 7-1 at 27. Defendant avers that the same allegations support both sets of claims and, thus, the unjust enrichment claim is duplicative.  *See id.* at 27-28.

Plaintiff responds that the elements of an unjust enrichment claim are different from the elements of a General Business Law §349 or § 350 claim.  *See* Dkt. No. 24 at 33.  She asserts that, because she could prevail on an unjust enrichment claim without establishing all the elements of her other claims, her unjust enrichment claim is not duplicative of her other claims and, therefore, should not be dismissed.  *See id.*

In New York, "to sustain an unjust enrichment claim, '[a] plaintiff must show that (1) the party was enriched, (2) at [the plaintiff's] expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered[.]'"  *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 455 (2018) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011)).  Such a claim "is 'not a catchall cause of action to be used when others fail'" . . . but "'is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'"  *Id.* (quoting [*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)]).  "An unjust enrichment claim is not available when it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) (citations omitted).  "Two claims are duplicative of one

another if they 'arise from the same facts . . . and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar*, 50 A.D.3d 667, 670, 854 N.Y.S.2d 536, 538 (2d Dep't 2008)) (other citation omitted).  "Where a claimant is entitled to a particular category of damages on one claim but not the other, the claims are not duplicative." *Id.*  "[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to 'explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'"  *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 678 (E.D.N.Y. 2017) (quoting *Ebin v. Kangadis Food Inc.*, 13-CV-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (Rakoff, J.)) (other citation omitted).

Plaintiff's complaint alleges that Defendant has "for years . . . marketed the Ensure Nutrition Drinks with labeling representations intended to appeal to consumers interested in health and wellness and intended to convince those consumers that the Products are both generally healthy . . . and . . . provide specific types of health benefits or bodily support."  *See* Complaint at ¶ 78.  Plaintiff alleges that Defendant makes a variety of claims that mislead consumers who lack information about nutrition and that, "[r]ather than correct the misconception created by its marketing," Defendant "continues to leverage consumer confusion to increase its profits at the expense of consumer' health."  *See id.* at ¶ 102.  Plaintiff further alleges that she purchased the drinks out of a desire to gain their supposed health benefits and that she "paid more for the" products "and would only have been willing to pay less, or unwilling to purchase them at all, absent the false and misleading labeling complained of herein."  *See id.* at ¶ 124.  Plaintiff's unjust enrichment claim alleges that Defendant gained "an economic benefit, in the form of profits resulting from the purchase and sale of the" products due to Defendant's "unlawful and inequitable conduct[.]"  *See id.* at ¶¶ 178-179.  Retaining such "economic

benefits" would be "inequitable, unconscionable, and unjust" because "the benefits were procured as a direct and proximate result of [Defendant's] wrongful conduct."  *Id.* at ¶ 180.

"[C]ourts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims." *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (citing *Grossman [v. Simply Nourish Pet Food Co., LLC,]* 516 F. Supp. 3d [261], 285 [(E.D.N.Y. 2021)] (holding that "the unjust enrichment claim duplicates the plaintiff's other claims, which arise out [sic] identical facts: the defendants' alleged misrepresentation on the Product packaging . . . the same allegations as her claims of violations of GBL §§ 349 and 350"); *Parks [v. Ainsworth Pet Nutrition, LLC]*, 377 F. Supp. 3d [241,] 248-49 [(S.D.N.Y. 2019)] ("Plaintiff's unjust enrichment claim that Defendant was enriched at Plaintiff's expense through payment for the Products duplicates his other claims based on the same alleged misrepresentation that the Products are 'natural,' and is therefore dismissed."); *Borenkoff v. Buffalo Wild Wings, Inc.*, No. 16-CV-8532 (KBF), 2018 WL 502680, at *5 (S.D.N.Y. Jan. 19, 2018) ("The essence of [plaintiff's] unjust enrichment claim is that (1) she purchased defendants' food items as a result of their material omissions, and (2) defendants[] unjustly retained the revenue from those purchases.  Those allegations are entirely duplicative of [plaintiff's] GBL § 349 claim, and therefore the unjust enrichment claim must be dismissed under New York law.")).

Plaintiff argues that her unjust enrichment claim is not duplicative of her General Business Law claims because the elements of an unjust enrichment claim are different from those supporting her General Business Law claims.  She points to two cases from this circuit, *McCracken v. Verisma Sys., Inc.*, No. 6:14-cv-6248 (MAT), 2017 WL 2080279, *8 (W.D.N.Y. May 15, 2017), and *Warner v. StarKist Co.*, No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573, *3

(N.D.N.Y. Mar. 25, 2019), in support of this argument.  The Court is not persuaded by the

reasoning of these cases, which focus their inquiry on the elements of the claims in deciding

whether they are duplicative, not on whether "they 'arise from the same facts . . . and do not

allege distinct damages.'"  *NetJets*, 537 F.3d at 175.  As Judge Karas explained,

> if a plaintiff can establish an unjust enrichment claim where
> his tort or contract claims fail, then, under *Corsello [v.
> Verizon N.Y., Inc.*, 18 N.Y. 777, 967 N.E.2d 1177 (2012)],[11]
> the unjust enrichment claim is not duplicative of these other
> claims.  *See Corsello*, 944 N.Y.S.2d 732, 967 N.E.2d at
> 1185.  The *McCracken* court's error was in how it applied
> this rule.  Whereas *Corsello* envisions a fact-intensive
> inquiry, *see id.* (unjust enrichment "available only in
> *unusual situations,*" typically where "the defendant, though
> guilty of no wrongdoing, has received money to which he
> or she is not entitled" (emphasis added)), the *McCracken*
> court reduced this analysis to a formulaic, element-to-
> element comparison between two causes of action, *see*
> 2017 WL 2080279, at *8.  Specifically, the court compared
> the elements of unjust enrichment to the elements of GBL §
> 349.  *See id.*  Because § 349 requires "proof that a
> defendant's acts are directed at consumers," which is not an
> element of unjust enrichment, the court found that the

---

[11] In *Corsello*, the plaintiffs sued Verizon when that company "attached a box to a building that
plaintiffs own" without plaintiffs' permission "and used the box to transmit telephone
communications to and from Verizon's customers in other buildings."  18 N.Y.3d at 781-82.  The
plaintiffs alleged "that Verizon took their property without paying them just compensation, and
deceived them into believing that no compensation was owed."  *Id.* at 782.  The New York Court
of Appeals concluded that plaintiffs had stated a valid "inverse condemnation" claim but found
that the statute of limitations barred the plaintiffs' General Business Law claim.  *See id.*  The
plaintiffs' "unjust enrichment claim [was] legally insufficient."  *Id.*  The *Corsello* court described
the general rules of an unjust enrichment claim, noting that "unjust enrichment is not a catchall
cause of action to be used when others fail.  It is available only in unusual situations when,
though the defendant has not breached a contract nor committed a recognized tort, circumstances
create an equitable obligation running from the defendant to the plaintiff."  *Id.* at 790.  Thus,
"[a]n unjust enrichment claim is not available when it simply duplicates, or replaces, a
conventional contract or tort claim."  *Id.* (citations omitted).  In *Corsello*, the court found that
"plaintiffs allege that Verizon committed actionable wrongs, by trespassing on or taking their
property, and by deceiving them into thinking they were not entitled to compensation.  To the
extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other
claims are defective, an unjust enrichment claim cannot remedy the defects.  The unjust
enrichment claim should be dismissed."  *Id.* at 791.

> plaintiffs' unjust enrichment claim was not duplicative of their § 349 claim.  *Id.* (brackets and citation omitted).  Citing *McCracken,* the *Warner* court simply replicated this error with respect to GBL § 350.  *See* 2019 WL 1332573, at *3 (finding unjust enrichment claim not duplicative of GBL § 350 claim because "[t]he elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350").  Of course, this formulaic comparison of elements produces anomalous results: so long as a claim contains an additional element that is "distinct" from the elements of unjust enrichment, a plaintiff's claim for unjust enrichment will automatically be deemed non-duplicative.  *See id.*  Such an approach is inconsistent with the vast weight of case law, including *Grossman, Wedra, Buonasera, Mahoney,* and *Koenig,* all cited above.  It is also inconsistent with the rule, articulated by the Second Circuit in *NetJets,* that "[t]wo claims are duplicative of one another if they 'arise from the same facts and do not allege distinct damages.'"  *NetJets Aviation,* 537 F.3d at 175 (citation and ellipsis omitted).  Notably, this rule focuses on *facts* and *damages*, but says nothing about a comparison of elements.  Thus *McCracken* and *Warner* cannot salvage Plaintiffs' unjust enrichment claim.

*Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 117 (S.D.N.Y. 2021).

The Court finds this reasoning persuasive.  The Court need not compare the elements of the particular claims to determine whether they are duplicative but, instead, must consider whether they "arise from the same facts and do not allege distinct damages."  *NetJets*, 537 F.3d at 175.

In this case, Plaintiff's unjust enrichment claim repeats the allegation in her General Business Law claims that Defendant misleadingly labeled and advertised the products in question, that Plaintiff paid a premium for the products because of this misrepresentation, and Defendant profited unfairly because of that conduct.  Moreover, Plaintiff has not alleged any damages distinct from those raised in her General Business Law claims.  Therefore, the Court grants Defendant's motion to dismiss Plaintiff's unjust enrichment claim.

**E.** **Standing to seek injunctive relief**

Defendant argues that Plaintiff lacks standing to seek any injunctive relief.  Defendant

claims that, in the Second Circuit, a party may not seek injunctive relief when her only claim is

for an injury that has already occurred.  *See* Dkt. No. 7-1 at 28.  Defendant asserts that Plaintiff

has not pled that she will suffer a future injury from Defendant's conduct because she now

understands the sugar content of the Ensure drinks and, thus, cannot claim she remains at risk of

being misled about the content of Defendant's products.  *See id.*

Courts may address only actual cases or controversies.  *See* U.S. Const., art. III, § 2.

Standing thus requires a plaintiff to "'allege[] such a personal stake in the outcome of the

controversy' as to warrant h[er] invocation of federal-court jurisdiction and to justify exercise of

the court's remedial powers on h[er] behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)

(quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L. Ed. 2d 663 (1962)) (footnote

omitted).  Article III standing requires a showing of "(1) an 'injury in fact,' (2) a sufficient 'causal

connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the

injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S.

149, 157-58 (2014) (quoting *Lujan [v. Defenders of Wildlife*, 504 U.S.] 560-61, 112 S. Ct. 2130

[(1992)] (internal quotation marks omitted)).  The injury "must be 'concrete and particularized'

and 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 158 (quoting *Lujan*, [504 U.S.]

at 560, 112 S. Ct. 2130 (some internal question marks omitted)).

Defendant seeks dismissal of any effort by Plaintiff to obtain injunctive relief because she

cannot demonstrate an actual or imminent injury.  "[T]o maintain an action for injunctive relief, a

plaintiff 'cannot rely on past injury . . . but must show a likelihood that [s]he . . . will be injured in the future.'" *Berni v. Barilla S.P.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)).  That potential injury "must be 'actual and imminent, not conjectural or hypothetical.'" *Id.* (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009)) (other citation omitted).  "If the injury occurred in the past – of if some future injury is merely conjectural or hypothetical – then plaintiffs will lack the kind of injury necessary to sustain a case or controversy" required to establish Article III standing.  *Id.* (citations omitted).  The purchasers of a product "who claim to have been deceived by a defendant's deceptive or misleading practices, even if they intend to purchase the good or service at issue again in the future, 'will not again be under the illusion' that cause their initial harm: 'instead, next time they buy [the product], they will be doing so with exactly the level of information that they claim they were owed from the beginning.'" *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 341 (S.D.N.Y. 2021) (quoting [*Berni*, 964 F.3d] at 148).  "Thus, courts have held, following *Berni*, that past purchasers generally lack standing to seek an injunction because it is unlikely that they, or any class they seek to represent, will suffer the same harm again." *Id.* at 341-42 (citing *Campbell v. Whole Foods Mkt. Grp., Inc.*, No. 20 Civ. 1291 (GHW), [516 F. Supp. 3d 370, 395-96 & n.17], 2021 WL 355405, at *16 & n.17 (S.D.N.Y. Feb. 2021) (collecting cases)) (footnote omitted); *see also Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 538 (S.D.N.YY. 2021) (stating that an allegation that a plaintiff if labeling were changed to be truthful is "too conjectural to give plaintiffs standing to enjoin future sales of the products at issue"); *Duran v. Henkel of Am., Inc.* 450 F. Supp. 3d 337, 356 (S.D.N.Y. 2020) (noting that "[a]lleging that one would purchase a product if re-engineered or re-marketed does not show a real or immediate threat of future injury" (citations omitted)).

Plaintiff's New York Business Law claims ask the Court to enjoin Defendant "from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law," and "to enjoin the unlawful acts and practices described" in the Complaint. *See* Complaint at ¶¶ 149, 153.  Her complaint alleges that she "still wishes to purchase healthy nutrition products with complete, balanced nutrition.  She continues to see the Ensure Nutrition Drinks at stores where she shops.  Plaintiff would purchase Ensure Nutrition Drinks in the future if the products were as represented, but unless [Defendant] is enjoined in the manner Plaintiff requests, she will not be able to rely on [Defendant's] claims in the future."  *See* Complaint at ¶ 128.

As the courts explained in the above-cited cases, in the Second Circuit, an allegation that a plaintiff seeking injunctive relief would purchase a product in the future if the labeling were accurate has not established standing for such relief.  In this case, Plaintiff seeks injunctive relief to alter the labels to make clear that a product with added sugar is not healthy or nutritious; information she now possesses.

The Court finds that Plaintiff cannot allege an injury in the future since she now has all the information she needs about the health effects of the products in question.  Plaintiff, thus, will not be misled by the labels or advertising.  Therefore the Court grants Defendant's motion to dismiss Plaintiff's claim for injunctive relief because she lacks standing to bring such a claim.

## III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss, *see* Dkt. No. 7, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 29, 2024

  Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge